**UNITED STATES, Appellee,**

v.

**Specialist Nho INTHAVONG, United States Army, Appellant.**

ARMY 9601318.

U.S. Army Court of Criminal Appeals.

17 April 1998.

For Appellant: Captain Thomas J. Barrett, JA; Lieutenant Colonel Michael L. Walters, JA (on brief).

For Appellee: Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA; Ma-

jor Virginia G. Beakes, JA; Captain John M. Bergen, JA (on brief).

Before GORDON, JOHNSTON, and ECKER, Appellate Military Judges.

## OPINION OF THE COURT

ECKER, Judge:

In accordance with his pleas, appellant was convicted by a military judge sitting as a general court-martial of one charge and four specifications involving possession of drugs with the intent to distribute (Specifications 1 and 2) and distribution of drugs (Specifications 3 and 4), in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1988)[hereinafter UCMJ]. He was sentenced to a dishonorable discharge, confinement for thirty-three months, total forfeitures, and reduction to Private E1. The convening authority reduced the period of confinement to twenty months, as required by the pretrial agreement, and approved the remainder of the sentence as adjudged.

This case questions whether the simultaneous distribution of different drugs can legally be charged as separate specifications of wrongful distribution under Article 112a, UCMJ. We answer this question in the affirmative.

### Background

During the providence inquiry,[1] appellant freely admitted to two separate incidents of wrongful drug distribution. In doing so, he fixed the facts by which we judge the correctness of those pleas and the resultant findings, including the question of multiplicity. *United States v. Lloyd,* 46 M.J. 19, 23–24 (1997).

The first distribution occurred on 25 October 1995 and involved only lysergic acid diethylamide (LSD). The second occurred on 30 October 1995 and involved the simultaneous distribution of LSD and marijuana to the same person at appellant's apartment. The government charged these distributions in two specifications differentiated by type of drug distributed rather than date of occur-

1. *United States v. Care,* 18 U.S.C.M.A. 535, 40     C.M.R. 247, 1969 WL 6059 (1969).

rence, the second alleging the LSD distributions occurred "on divers occasions."

Appellate defense counsel now argue for the first time on appeal, that as a matter of binding precedent, the two drug distribution specifications are multiplicious for findings and must be consolidated. *See United States v. Williams,* 22 M.J. 953 (A.C.M.R.1986); *United States v. Zupan,* 17 M.J. 1039 (A.C.M.R.1984).[2]

The government argues appellant has forfeited this issue. We decline to adopt the government's argument, because appellant raises significant questions concerning past precedent of this court. *See United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993); *United States v. Britton,* 47 M.J. 195 (1997) (Effron, J., concurring); *United States v. Claxton,* 32 M.J. 159, 162 (C.M.A.1991); *United States v. Holt,* 16 M.J. 393 (C.M.A.1983); and *United States v. Yerich,* 47 M.J. 615 (Army Ct.Crim. App.1997). *See also Lloyd,* 46 M.J. 19.[3]

As a starting point, we categorically reject appellant's implication[1] that the government's decision to charge by drug type rather than chronologically, serves, as a matter of law, to hinder this court's ability to do justice. *See* UCMJ art. 66(c); *Claxton,* 32 M.J. at 162; *United States v. Cole,* 31 M.J. 270 (C.M.A.1990). Thus, we could, in the exercise of our "awesome, plenary, de novo power" under Article 66(c), UCMJ, obviate this multiplicity claim by restructuring the specifications, via exceptions and substitutions, to reflect appellant's misconduct chronologically and conform them to the facts established by his admissions. However, our belief that *Zupan* and *Williams* no longer constitute

good law makes resort to our extraordinary powers under Article 66(c) neither necessary nor appropriate. As drafted, the specifications are neither multiplicious nor do they constitute an unreasonable multiplication of charges.

**Law**

1. Military Precedent and Multiplicity.

a. Generally.

Starting with *United States v. Teters,* 37 M.J. 370 (C.M.A.1993), the Court of Military Appeals [now The Court of Appeals for the Armed Forces] commenced to align military multiplicity law with civilian practice. The court focused on cases such as *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989); *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985); *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); and *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in charting this new course. In doing so, it abandoned the "fairly embraced" analysis developed in *United States v. Baker,* 14 M.J. 361 (C.M.A.1983), and its progeny, in favor of the *Blockburger* "statutory elements" test. *Teters,* 37 M.J. at 376.

The essence of the statutory elements test presumes Congress intended to permit "multiple convictions at a single trial for different statutory violations arising from the same act or transaction" if: (a) each statutory provision requires proof of at least one fact not required by the other and (b) there is no "clear indication of a contrary legislative intent." *Teters,* 37 M.J. at 376–77 (citations omitted). The *Blockburger* test has become

---

**2.** In *Zupan,* this court held that possession of marijuana and LSD "at the same time and place" constituted "a single offense for findings purposes." *Zupan,* 17 M.J. at 1041. In *Williams,* the simultaneous possession involved marijuana and heroin. Both cases address the charging of simultaneous *possession* of different drugs, where appellant is charged with *distributions.* This difference alone makes them factually distinguishable and thus not the *binding* precedent appellant claims.

**3.** Our willingness to continue to reject the forfeiture argument should not be presumed. *See* Rules for Courts–Martial 905(b)(2) and (e), and 906(b)(12) [hereinafter R.C.M.]; *United States v.*

*Wilson,* 45 M.J. 512, 513 (Army Ct.Crim.App.1996)(litigants have the responsibility and best opportunity to resolve questions of multiplicity).

**4.** Appellant explicitly argues that *Zupan* and *Williams* mandate charging simultaneous distributions of drugs through a single specification. Thus, the marijuana distribution cannot be legally charged separately from the related LSD distribution and the government's charging decision forecloses this court from affirming more than one specification of wrongful distribution through modification of these specifications.

the primary focus for multiplicity analysis and subsequent decisions of the Court of Appeals for the Armed Forces have continued this transition. *See, e.g., Britton,* 47 M.J. 195; *United States v. Oatney,* 45 M.J. 185 (1996); *United States v. Weymouth,* 43 M.J. 329 (1995); and *United States v. Foster,* 40 M.J. 140 (C.M.A.1994).

However, *Blockburger's* focus on different statutes provides no assistance in cases such as appellant's, which involves the same statutory provision and thus the same statutory elements. In this situation, the Supreme Court has turned to "the rule of lenity" to determine Congressional intent concerning multiple punishments for a single transaction charged as multiple counts of the same statute. *See Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). "This policy of lenity means that [courts] will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on *no more than a guess* as to what Congress intended." *Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958) (emphasis added) (cited in *United States v. Davis,* 656 F.2d 153, 158 (5th Cir.1981)) [hereinafter *Davis I* ]. Further, statutory ambiguity may not be manufactured as a device to defeat manifest congressional intent. *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). Rather, "[t]he rule of lenity may be applied only if, after reviewing all sources from which legislative intent may be gleaned, the statute *remains truly ambiguous.*" *Davis I,* 656 F.2d at 158 (citations omitted)(emphasis added). *See also United States v. DeJesus,* 806 F.2d 31, 36 (2d Cir. 1986); *Bifulco,* 447 U.S. at 387, 100 S.Ct. at 2252 (the analysis should focus on "the language and structure, legislative history, and motivating policies of the Act").

b. Appellant's Precedent.

Appellant's assertion that this court's decisions in *Zupan* and *Williams* are binding precedent is wrong. *Zupan's* holding relies on this court's decision in *United States v. Harclerode,* 17 M.J. 981 (A.C.M.R.1984), which had as its analytical foundation, "[t]he same legal and policy considerations that impelled the holdings in *United States v. Baker,* 14 M.J. 361 (C.M.A.1983), and its progeny." *Harclerode,* 17 M.J. at 984.[5]

In light of the demise of the *Baker* line of authority, *Zupan* and *Harclerode* have effectively been overturned, or at best, are limited in applicability. *See Foster,* 40 M.J. at 146; *Teters,* 37 M.J. at 376. Given that *Williams* was issued after *Zupan* and contains neither citation to authority nor analysis, we conclude that it similarly provides no precedential support for appellant's claim. We have also considered the decision in *United States v. Montgomery,* 30 M.J. 1118 (N.M.C.M.R.1989), cited in the government's brief. While holding that simultaneous *use* of different drugs cannot be charged as separate offenses, this conclusion was similarly based on *Baker.* Accordingly, we find *Montgomery* offers no precedential support to appellant. We have neither found, nor been cited to, other military precedent dealing with this issue, and decided since *Teters. Cf., United States v. Graves,* 47 M.J. 632 (1997); *United States v. Albrecht,* 43 M.J. 65 (1995).

2. The Language of Article 112a.

Article 112a, UCMJ, contains no express statement of congressional authority or intent concerning multiple convictions involving simultaneous violations. Thus we look to *Bell* and the rule of lenity to determine congressional intent.

---

**5.** The decision in *Harclerode* is more complicated than this simple reference suggests. The alleged multiplicity involved multiple charges of conspiracy and larceny. In deciding the issue, our court intertwined the concept of "unreasonable multiplication of charges" under the MANUAL FOR COURTS-MARTIAL, United States, 1969 (Rev.) para. 26b [hereinafter MCM, 1969], with application of the *Baker* multiplicity analysis. Since these con-

cepts, though related, are not the same, we cannot be sure of the precise basis for the court's holding. However, both legal components of the decision have subsequently been modified. *Compare* MCM, 1969, para. 26b, *with* MANUAL FOR COURTS-MARTIAL, United States, (1995 edition) [hereinafter MCM, 1995], R.C.M. 307(c)(4) discussion. *See also Teters,* 37 M.J. at 376.

The prohibitory language for Article 112a, UCMJ, is found in subsection (a), which states in pertinent part: "(a) Any person subject to this chapter who wrongfully [commits an enumerated type of drug misconduct involving] ... *a substance described in subsection (b)* shall be punished as a court-martial may direct." (emphasis added).[6] When interpreting statutory language " 'our starting point must be the language employed by Congress.' Moreover, absent evidence to the contrary, the ordinary meaning of the words used expresses legislative intent." *United States v. Easter,* 981 F.2d 1549, 1558 (10th Cir.1992) (citations omitted). *See also Dettinger v. United States,* 7 M.J. 216, 223–24 (C.M.A.1979)(the context of a word's use, which includes consideration of the drafters' stated purpose and policy, ultimately determines its true meaning and effect).

Applying this rule of statutory construction, we believe the phrase "a substance described in subsection (b)" clearly establishes congressional authorization to separately charge and punish under Article 112a, each drug involved in an incident of drug misconduct. In fact, only substitution of the word "each" for the word "a," or an otherwise express statement concerning such intent, would have rendered this conclusion unambiguous on its face. Certainly, if a contrary intent were involved, Congress could have easily said "controlled substances." Nevertheless, because of the importance of the question of congressional intent, we next turn to the legislative history behind Article 112a.

3. Development of Article 112a, UCMJ.

Prior to 1983, the Manual for Courts–Martial, 1969, (Rev.), as amended by Executive Order 12383 (Sep. 23, 1982), provided for the charging of military drug offenses as violations of Articles 92, 133, or 134, UCMJ, 10 U.S.C. §§ 892, 933, and 934. This courts-martial practice relied on cumbersome and unnecessary litigation concerning the general regulations or the assimilation of the federal drug schedules for the appropriate proscriptive language.

The military's escalating rate of drug abuse during the late 1970's and early 1980's exacerbated these concerns and prompted the search for a solution.[7] This ultimately led to enactment of Article 112a, UCMJ. *See* Military Justice Act of 1983, Pub.L. No. 98–209, 97 Stat. 1393 (1983).

The development of this new article drew upon the provisions of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (codified at 21 U.S.C. §§ 801–904) [hereinafter the Drug Act], and specifically § 841. *See* MCM, 1995, app. 21, Analysis of Punitive Articles, at A23–10 to A23–11;

6. This language was adopted from and is strikingly similar to, that of § 841(a)(1) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (codified at 21 U.S.C. §§ 801 *et seq.*). Section 841(a) states, in pertinent part: "Unlawful acts (a). Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, *a controlled substance.*" (emphasis added). The difference between the phrase "a substance described in subsection (b)," used in Article 112a, and the corresponding phrase "a controlled substance," used in § 841(a), has no practical effect on the issue under consideration.

7. Thus, during Senator Jepsen's opening statement in the initial hearings on this matter before the Subcommittee on Manpower and Personnel, Senate Armed Services Committee, he described as "inconceivable to us" the absence of a specific drug offense article within the Code, given that drug abuse posed "a most serious threat to military readiness and constitutes a significant percentage of all courts-martial." *The Military Justice Act of 1982, To Amend Chapter 47 of Title 10, United States Code (Uniform Code of Military Justice), To Improve the Military Justice System, and For Other Purpose: Hearings on S. 2521 Before the Subcomm. on Manpower and Personnel of the Comm. on Armed Services,* 97th Cong. 14 (1982)(opening statement by Senator Roger Jepsen, Subcomm. Chairman), *reprinted in* UNITED STATES ARMY LEGAL SERVICES AGENCY, INDEX AND LEGISLATIVE HISTORY: UNIFORM CODE OF MILITARY JUSTICE 1983 (Legislative History of the Military Justice Act of 1983), at 251 (1984, 1985). *See also* Legislative History of the Military Justice Act of 1983, Pub.L. No. 98–209, 1983 U.S.C.C.A.N. (97 Stat. 1393) 2182; Hearings on S. 2521, *supra,* at 108 (statement by Chief Justice Robinson O. Everett, Court of Military Appeals) (33% of cases before Court of Military Appeals involve drugs); and S. REP. No. 98–53 at 29 (analysis of Sec. 8), *reprinted in* UNITED STATES ARMY LEGAL SERVICES AGENCY, INDEX AND LEGISLATIVE HISTORY: UNIFORM CODE OF MILITARY JUSTICE 1983 (Legislative History

*United States v. Speer*, 36 M.J. 997, 999 (A.C.M.R.1993). Two main considerations surfaced in the congressional hearings on Article 112a, UCMJ: the desire to incorporate the Drug Act's flexibility into the Uniform Code of Military Justice as a means of arming commanders to deal with drug abuse; and the need to bring military practice in line with civilian practice, especially "that in the Federal District Courts." [8] Given this stated purpose, we next turn to federal case law as a check on our interpretation of the phrase "a substance described in subsection (b)." *Speer*, 36 M.J. at 999 (questions of interpretation and application of Article 112a are to be resolved by looking to federal sources concerning § 841(a)).

### 4. Federal Court Decisions.

The legality of multiple convictions under 21 U.S.C. § 841(a) for simultaneous acts of drug misconduct involving different drugs has been addressed in seven decisions by six of the Federal Circuit Courts of Appeal. No court has failed to uphold multiple convictions under these circumstances, and no decision contains a dissenting opinion. *See United States v. Davis*, 55 F.3d 517 (10th Cir. 1995) [hereinafter *Davis II* ]; [9] *United States v. Bonilla Romero*, 836 F.2d 39 (1st Cir. 1987); *United States v. DeJesus*, 806 F.2d 31 (2d Cir.1986); *United States v. Grandison*, 783 F.2d 1152 (4th Cir.1986); *Davis I*, 656 F.2d 153 (all dealing with simultaneous distribution of, or possession with intent to distribute, different drugs); *United States v. Richardson*, 86 F.3d 1537 (10th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996); and *United States v. Pope*, 561 F.2d 663 (6th Cir.1977)(both dealing with simultaneous possession of different drugs).

Two theories for the holdings of the circuit courts have appeared. In *Pope*, the court focused on the fact that the two drugs involved separate schedules under the Drug Act. It treated this "fact" as constituting a separate element within the meaning of *Blockburger*.

The decision in *Davis I* rejected the *Pope* analysis. First, it noted that the *Blockburger/Albernaz* analysis was inapplicable because the case before it involved separate charges citing the same statutory provision, rather than separate statutes. More importantly, the court noted that the plain language of the statute did not support treating the schedules as an element and that to do so would not produce a uniform solution to the issue given that each schedule listed several different drugs. *Davis I*, 656 F.2d. at 156, 159–60.

Instead, the court in *Davis I* applied the rule of lenity, as set out in *Bell* and its progeny, and focused on the intent of Con-

of the Military Justice Act of 1983), at 345, 555 (1984, 1985).

**8.** *See* Hearing on S. 2521, *supra*, at 132 (statement by Chief Judge Robinson O. Everett, U.S. Court of Military Appeals), *reprinted in* UNITED STATES ARMY LEGAL SERVICES AGENCY, INDEX AND LEGISLATIVE HISTORY: UNIFORM CODE OF MILITARY JUSTICE 1983 (Legislative History of the Military Justice Act of 1983), at 369 (1984, 1985). *See also* Hearing on S. 2521, *supra*, at 43; 44 (statement by William H. Taft IV, Dep't of Defense Gen. Counsel); 50 (statement by Maj. Gen. Thomas B. Bruton, The Judge Advocate General of the Air Force); 274 (submission by John Jay Douglass, Dean, Nat'l College of Dist. Attorneys), *reprinted in* UNITED STATES ARMY LEGAL SERVICES AGENCY, INDEX AND LEGISLATIVE HISTORY: UNIFORM CODE OF MILITARY JUSTICE 1983 (Legislative History of the Military Justice Act of 1983), at 280, 281, 287, 511 (1984, 1985). *See also To Amend Chapter 47 of Title 10, United States Code (the Uniform Code of Military Justice), To Improve the Quality and Efficiency of the Military Justice System, To Revise the Laws Concerning Review of Courts–Martial, and for*

*Other Purposes:* Hearings on S. 974 Before the Military Personnel and Compensation Subcomm. of the Comm. on Armed Services, 98th Cong. 38 (1983) (statement by William H. Taft IV, Gen. Counsel of the Dep't of Defense), *reprinted in* UNITED STATES ARMY LEGAL SERVICES AGENCY, INDEX AND LEGISLATIVE HISTORY: UNIFORM CODE OF MILITARY JUSTICE 1983 (Legislative History of the Military Justice Act of 1983), at 635 (1984, 1985)(bill's proposals would more closely conform the Code to civilian criminal process).

**9.** *Davis II* involved convictions for simultaneous possession with intent to distribute both powder cocaine and crack cocaine (base). Citing *Easter*, 981 F.2d at 1558–59, the court held as settled that simultaneous drug misconduct involving both powder and crack cocaine may be separately prosecuted under 21 U.S.C. § 841. *Easter* explains the chemical, and therefore factual, difference between cocaine hydrochloride (powder) and cocaine base (crack). On this difference, the court concluded that the congressional intent behind passing 21 U.S.C. §§ 801 *et seq.* justifies the separate treatment for both findings and sentencing.

gress in adopting the language of 21 U.S.C. § 841(a). After noting that the phrase "a controlled substance" could be fairly interpreted to permit only one punishable offense for simultaneous possessions of different drugs with intent to distribute, the court turned to the statute's legislative history. There it determined that Congress was concerned about the "growing drug menace" in the United States and desired to provide prosecutors the most flexible and effective mechanism to combat this threat. Given the legislative concerns noted above, the court held that the choice of the phrase "a controlled substance," as opposed to other possible formulations, manifested clear congressional intent to authorize separate convictions under 21 U.S.C. § 841 in situations involving different drugs, but one act or incident of misconduct. This opinion has consistently been cited in the decisions of the other circuits. *See, e.g., Davis II,* 55 F.3d 517; *Bonilla Romero,* 836 F.2d at 47; *DeJesus,* 806 F.2d at 37. Nevertheless, some decisions have continued to cite *Pope* as secondary support in upholding multiple charging.

### Analysis

■ There is no factual dispute involved in this case. While mindful of Judge Cox's reservations expressed in *United States v. Byrd,* 24 M.J. 286, 293 (C.M.A.1987) (concurring in the result), we are satisfied that full litigation of this matter at trial would not have contributed anything more helpful in resolving appellant's claim. Further, to sidestep this matter, as urged by our brother, would only serve to unnecessarily delay resolution of issues of practical, everyday importance to the field.

*Teters* and subsequent cases have effectively overruled cases based on *Baker,* including those relied upon by appellant. Finding no cases addressing multiple convictions for simultaneous drug misconduct since

the advent of *Teters* necessitates a reevaluation of this issue.[10]

In applying *Bell,* we note that the language of Article 112a, UCMJ, strongly supports the conclusion that multiple convictions are intended and authorized. However, this is neither expressly stated nor is it decidedly unambiguous. Nevertheless, it is clear that this article was intended to be the military equivalent of 21 U.S.C. § 841(a) of the Drug Act. Its legislative history addressed the same concerns and sought to provide prosecutors the flexibility and emphasis given to civilian law enforcement in combating drugs. Further, the adoption of proscriptive language in Article 112a, mirroring that used in 21 U.S.C. § 841(a) after two federal circuit court decisions interpreting the corresponding language in § 841(a), is strong evidence that Congress intended both provisions to be similarly interpreted and applied. Accordingly, we turn to federal precedent. *Speer,* 36 M.J. 997.

As noted above, federal decisions have uniformly concluded that the phrase "a controlled substance" in 21 U.S.C. § 841(a) reflects clear congressional intent to authorize multiple convictions for the simultaneous distribution of different drugs. *See Davis I,* 656 F.2d 153. Given the relationship between the two statutes and Congress' clear intent to bring military practice in line with that pertaining to federal drug prosecutions, we perceive no basis to interpret the phrase "a substance described in subsection (b)[listing controlled substances]" in Article 112a, UCMJ, differently.

We have considered Judge Johnston's thoughtful analysis in his opinion concurring in the result, and are unpersuaded. Accordingly, we hold that this phrase reflects clear legislative intent to authorize multiple convictions for the simultaneous distribution of different drugs under Article 112a, UCMJ.

---

10. We note, however, that the court in *Montgomery* did comment on the close analogous relationship between Article 112a and § 841(a) in light of *Davis I. See Montgomery,* 30 M.J. at 1120. Nevertheless, by applying somewhat circular reasoning, it concluded that *Baker's* control of sentencing multiplicity precluded such a comparison and so declined to do so. However, multiplicity for findings and sentencing are now the same. *Oatney,* 45 M.J. at 185; *United States v. Morrison,* 41 M.J. 482 (1995). *But see United States v. Criffield,* 47 M.J. 419 (1998)(trial judge, having correctly ruled that the offenses were not multiplicious for findings, was within his discretion to treat the offenses as multiplicious for sentencing).

Though not asserted as an issue, we have also evaluated Specifications 3 and 4 under the concept of an unreasonable multiplication of charges. We conclude that this concept is not implicated in appellant's case. While there may be a multiplication of charges, there is no evidence that it is *unreasonable* under the circumstances.[11]

The findings of guilty and the sentence are affirmed.

Senior Judge GORDON concurs.

JOHNSTON, Judge, concurring in result:

The appellant pleaded guilty to four specifications alleging violations of Article 112a, UCMJ. During the providence inquiry, he indicated to the judge that he believed he was guilty. He also provided the military judge with a factual basis for his pleas. The pleas were accepted by the military judge as provident. *See United States v. Davenport,* 9 M.J. 364 (C.M.A.1980). The appellant properly was advised of the maximum authorized punishment based on the four separate specifications.

On appeal, the appellant contends that the facts he provided require that Specification 3 (distribution of LSD on 25 and 30 October 1995) and Specification 4 (distribution of marijuana on 30 October 1995) be merged because they concerned a simultaneous drug transaction on 30 October 1995. The second LSD transaction could have been included in Specification 4—possibly rendering that

specification as duplicitous. It was not prejudicial error, however, for the government to charge the appellant with a duplicitous pleading by including the second LSD offense in Specification 3.

The appellant providently pleaded guilty to four fifteen-year drug specifications in exchange for a twenty-month confinement limitation in the pretrial agreement. He got what he bargained for. We need not make substantive law on this guilty plea record. *See United States v. Byrd,* 24 M.J. 286, 293 (Cox, J., concurring in result). We need not determine that the second LSD transaction could have been charged as a separate offense in an additional specification. It was not, and that issue is not before us.

### Simultaneous Distribution of LSD and Marijuana

The precise question that we need not address on this guilty plea record is whether Congress intended to provide for separate convictions and punishments for the simultaneous distribution of LSD and marijuana under the provisions of Article 112a, UCMJ. If we address the issue, however, we should do so in accordance with established precedent.

Article 112a, UCMJ, states in pertinent part:

(a) Any person subject to this chapter who wrongfully ... distributes ... *a substance described in subsection (b)* shall be punished as a court-martial may direct.

---

11. *See* R.C.M. 307(c)(4) discussion; *Wilson,* 45 M.J. at 514. The evils implicated by the *separate, but related concepts* of multiplicity and unreasonable multiplication of charges concern misrepresenting or exaggerating a person's criminality and thereby unfairly increasing his punitive exposure. *See United States v. Doss,* 15 M.J. 409, 413 (C.M.A.1983); *Baker,* 14 M.J. at 365. *See also Ball,* 470 U.S. 856, 105 S.Ct. 1668 (conviction alone implicates punishment).

Here, there was no such overreaching concerning appellant. Rather, the charges sought to portray a course of conduct that involved combining drugs. Given the nature of military operations and the potential for disaster due to impaired judgment or reflexes, we regard acts which combine drugs, and thereby multiply their deleterious effects upon service members, as reflecting exponentially more serious misconduct. Under such circumstances, we perceive nothing unreasonable or inappropriate in treating and

ultimately punishing such aggravated misconduct more harshly. Cases such as *United States v. Thomas,* 43 M.J. 903 (Army Ct.Crim.App.1996) more realistically implicate the concerns of *unreasonable multiplication of charges* rather than multiplicity and are therefore distinctly reconcilable with appellant's case.

Further, using a duplicitous pleading for Specification 3 not only fairly characterized appellant as a dealer, but reduced his charges from five or more to four specifications of drug distribution. This effectively reduced appellant's potential for confinement by at least fifteen years. *See* MCM, 1995, Part IV, para. 37e(2)(a)(each separate distribution of, or possession with intent to distribute, LSD or marijuana authorizes an additional fifteen years of confinement). Under such circumstances, the prosecution's charging of appellant hardly constitutes an abuse of discretion. *See* R.C.M. 906(b)(5) discussion.

(b) The substances referred to in subsection (a) are the following:

(1) ... lysergic acid diethylamide [LSD] ... and marijuana, and any compound or derivative of any such substance.

(2) Any substance not specified in clause (1) that is listed on a schedule of controlled substances prescribed by the President for the purposes of this article.

(3) Any other substance not specified in ... [clause (1) or (2)] that is listed in Schedules I through V of section 202 of the Controlled Substances Act (21 U.S.C. § 812).

10 U.S.C. § 912a (emphasis added).

The similar provision in the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 841 provides, in pertinent part:

(a) [I]t shall be unlawful for any person knowingly or intentionally—

(1) to ... distribute ... *a controlled substance* ....

....

(b) ... any person who violates subsection (a) shall be sentenced as follows:

(1)(A) In the case of a controlled substance in schedule I or II which is a narcotic drug....

(B) In the case of a controlled substance in schedule I or II which is not a narcotic drug.

21 U.S.C. § 841(a) and (b) (emphasis added).

The majority opinion seems to say that because Congress intended to interpret the phrase "a controlled substance" in 21 U.S.C. § 841(a)(1) to allow for a separate conviction and punishment for each illegal drug distributed, then the phrase "a substance described in subsection (b)" in Article 112a, UCMJ, should be construed in the same manner. This is a dubious proposition at best, and a violation of the rule of lenity in applying a criminal statute.

In reviewing Article 112a, UCMJ, to determine whether Congress intended to treat simultaneous distribution of two substances listed in Article 112a(b)(1) as one act or multiple acts for purposes of findings and punishment, we are guided by the rule of lenity. The policy of lenity means that the courts will not interpret a federal criminal statute "so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958).

The UCMJ provision at issue in this case prohibits distribution of "a substance described in subsection (b)." Was the use of the wording "a substance" intentional and an indication of congressional intent or was it merely a convenient grammatical usage? If the provision had been worded "substances described in subsection (b)," might it have been construed as requiring distribution of two substances before it was violated? If Congress had intended that the distribution of "each" prohibited substance was intended to be a separate offense, then why not use the phrase "each substance described in subsection (b)" to clearly indicate their intent? If they had intended "any" of the prohibited substances to violate the provision, then why not use "any" and avoid the ambiguity? I am satisfied that the use of the word "a" rather than "each" or "any" as a modifier to the word "substance" can not be construed, standing alone, to be any indicia of congressional intent. I am satisfied that the wording, standing alone, is ambiguous. The majority opinion apparently agrees with my assessment.

The rule of lenity may be applied to the statute in question, however, only if after reviewing all sources from which legislative intent may be gleaned, the statute remains truly ambiguous. The majority opinion concludes that because several of the federal circuit courts have construed the 21 U.S.C. § 841 provision as intending to permit federal district courts to penalize distribution of "each" controlled substance, the UCMJ provision should be interpreted in a similar fashion.

The majority opinion assertion is based in large part on *United States v. Davis,* 656 F.2d 153 (5th Cir.1981). That decision was grounded on a dual rationale. First, the court determined that Congress had enacted the statute intending to "give maximum flexi-

bility to judges" in sentencing. *Davis,* 656 F.2d at 159. If the statute was interpreted in such a way that all controlled substances simultaneously possessed were but one offense, then the sentencing judge would be deprived of flexibility. The second rationale was that the statute, which consolidated over fifty separate statutes, subsumed provisions that clearly were intended to proscribe "each" drug involved in a transaction. It "would be an anomaly" to find that the newer statute was less flexible than prior provisions, "especially in light of Congress' stated intent of providing trial judges with more flexibility in sentencing." *Davis,* 656 F.2d at 159.

However valid these considerations may be when applied to the federal drug statute, they are inapplicable to the UCMJ provision. First, distribution of one drug or many drugs under Article 112a, UCMJ, shall be "punished as a court-martial may direct." Under Article 56, UCMJ, the punishment that a court-martial may direct for an offense may not exceed the limits that the President prescribes. He could set the maximum punishment based on the number of drugs distributed, who they are distributed to, their potency or tendency to lead to addiction, the quantity or quality of the drugs involved, or any other relevant characteristics that he determines have an adverse impact on the military forces. His flexibility in establishing the maximum sentence for the simultaneous distribution of LSD and marijuana is independent of the construction given to the phrase "a substance" in Article 112a, UCMJ.[1] Thus, flexibility in sentencing is neither enhanced nor impeded by the manner in which Article 112a, UCMJ, is interpreted.

Second, no preexisting statutory provisions were subsumed by the UCMJ provision. Cases prosecuted under the UCMJ prior to the creation of Article 112a were based on Articles 92, 133, or 134, UCMJ. These cases generally focused on other issues. *See* MCM, 1995, Article 112a analysis, at A23–10.

Third, Congress knew or should have known at the time of enacting Article 112a, UCMJ, that the phrase "a substance" would create only a single offense even though several drugs might be involved. Only *Davis* and *United States v. Pope,* 561 F.2d 663 (6th Cir.1977), are identified by the majority opinion as having addressed simultaneous drug offenses under the federal statute at the time the UCMJ provision was enacted.[2] The court in *Davis* conceded that, but for reference to legislative history, the phrase "a controlled substance" in the federal statute would be interpreted as creating a single punishable offense for possession of two controlled substances. Thus, when the UCMJ provision was enacted, the only federal circuit court that had squarely addressed the issue made it clear that the plain language of "a controlled substance" was not sufficient to manifest congressional intent to create multiple offenses for the simultaneous possession of several controlled substances.

Finally, there are no clear statements in the legislative history of the UCMJ provision that indicate that Congress intended those subject to the UCMJ to be liable for multiple punishments for the simultaneous distribution of LSD and marijuana. The legislative history clearly reveals congressional intent to provide a specific statute to deal with the serious threat that drug abuse posed for military readiness. But that same legislative

---

1. The flexibility in sentencing has been utilized to provide an escalator clause for certain situations, unique to the military, in which drug involvement presents an even greater danger than usual (*e.g.,* while on duty as a sentinel or lookout, or at a missile launch facility). *See* MCM, 1995, Part IV, para. 37e. Executive Order No. 12383 (Sep. 23, 1982), which amended the maximum punishment in the MCM, differentiated punishment for possession of marijuana based on the quantity possessed, *i.e.,* more or less than thirty grams. The President has not elected to differentiate drug *distribution* offenses by focusing on either quantity or multiple drug involvement.

2. *Pope* focused on the location of drugs in question being listed as controlled substances on separate "schedules" of 21 U.S.C. § 812. In that case, heroin was a Schedule I controlled substance while methadone was a Schedule II item. The case apparently treated each drug as a separate element of proof justifying multiple punishment for different offenses. Military cases have not taken this approach. Furthermore, both of the drugs involved in this case are in the same subparagraph of the military provision—Article 112a(b)(1).

history does not show clearly an intent to provide for multiple punishment for a simultaneous possession or distribution. As the majority opinion correctly states, "where a single federal statute is involved, any ambiguity in congressional intent regarding imposition of multiple punishments for a single transaction must be resolved in the defendant's favor." *United States v. DeJesus*, 806 F.2d 31, 36 (2d Cir.1986)(citing *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955)(rule of lenity)).

Each of the preceding considerations indicates that Article 112a, UCMJ, is unlike the related federal statute in significant ways. Thus, the rule of lenity controls in the interpreting the UCMJ criminal provision. Consequently, I would construe the Article 112a, UCMJ, prohibition concerning "a substance described in subsection (b)" by focusing on the seven prohibited acts—use, possession, manufacture, distribution, etc.—rather than on the number of substances involved in the prohibited conduct to determine whether a single offense has been committed. The rule of lenity demands this approach.