# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
ALDYKIEWICZ, SALUSSOLIA, and WALKER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private First Class DOMINIC S. MYERS**
**United States Army, Appellant**

ARMY 20180309

Headquarters, Fort Campbell
Matthew A. Calarco, Military Judge
Colonel Andras M. Marton, Staff Judge Advocate

For Appellant: Captain Joseph C. Borland, JA; Lieutenant Colonel Tiffany D. Pond, JA (on brief); Colonel Elizabeth G. Marotta, JA; Lieutenant Colonel Christopher D. Carrier, JA; Lieutenant Colonel Tiffany D. Pond, JA (on brief on specified issue).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Craig J. Schapira, JA; Captain Christopher K. Wills, JA (on brief on specified issue).

6 March 2020

---------------------------------------
MEMORANDUM OPINION
---------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WALKER, Judge:

This appeal raises a compelling question: whether joint purchasers and possessors of a controlled substance, who intend to share it between themselves as users, may be found guilty of wrongful distribution of a controlled substance under Article 112a, Uniform Code of Military Justice [UCMJ].[1] As we discuss below, we

---

[1] A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of one specification of fraudulent enlistment, three specifications of wrongful use of a controlled substance, and one specification of wrongful distribution of a controlled substance, in violation of Articles 83 and 112a, UCMJ, 10 U.S.C. §§ 883 and 912a. The military judge sentenced appellant to a bad-conduct discharge, confinement for six months, and reduction to the grade of E-1. Pursuant

(continued . . .)

answer that question in the affirmative only because we are compelled to follow established precedent in our Superior Court's decision in *United States v. Ratleff*, 34 M.J. 80 (C.M.A. 1992).

In *Ratleff*, the court held that "[t]he plain, ordinary construction of Article 112a [UCMJ]," requires us to conclude that simply *passing* a controlled substance to another constitutes "delivery" of the substance within the meaning of distribution under Article 112a, UCMJ. *Ratleff*, 34 M.J. at 82.

Our Superior Court's "technical construction of the statute" causes concern in its application. *Id.* But for our Superior Court's decision in *Ratleff*, we would hold, under the specific facts in this case, that the sharing of a controlled substance between joint possessors who simultaneously acquire possession of a drug for their own use fails to constitute a "distribution" under Article 112a. *See, e.g., United States v. Swiderski*, 548 F.2d 445, 450 (2d Cir. 1977). While we acknowledge that we are bound to follow our Superior Court's precedent, we suggest reconsideration of *Ratleff* is appropriate.

## I. BACKGROUND

Appellant pleaded guilty to wrongful distribution of cocaine to Specialist (SPC) SM on multiple occasions.[2] During the providence inquiry, appellant explained that he and SPC SM engaged in the simultaneous purchase and ingestion of cocaine on approximately ten to fifteen occasions. Appellant admitted that he would arrange for the purchase of the cocaine from a dealer he knew in Nashville. Appellant and SPC SM would drive together to the dealer and SPC SM would stand

---

(. . .continued)
to a pretrial agreement, the convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for five months, and reduction to the grade of E-1.

Appellant's case is before us for review pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 [UCMJ]. While appellant did not raise any issues on appeal, we specified the issue of whether the evidence is sufficient as a matter of law to sustain appellant's conviction for wrongful distribution of a controlled substance. *United States v. Myers*, ARMY 20180309 (Army Ct. Crim. App. 26 Jul. 2019) (order).

[2] The stipulation of fact in this case is anything but the model of clarity in describing the underlying facts of how appellant distributed cocaine to SPC SM. Therefore, the underlying facts for this offense are derived almost exclusively from the military judge's providence inquiry with appellant.

beside appellant during the transactions. They both contributed money to purchase the cocaine. After receiving the cocaine, appellant and SPC SM would drive back from Nashville and jointly consume the cocaine in a barracks room at Fort Campbell, Kentucky the same night of purchase. Appellant explained that he distributed the cocaine to SPC SM by laying it on a flat surface and the two of them would share it, passing it back and forth for consumption.

## II. LAW AND DISCUSSION

### A. Standard of Review

When an appellant pleads guilty, any question as to his conviction "must be analyzed in terms of the providence of his plea, not sufficiency of the evidence." *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996). In the context of a guilty plea, we do not review the record for legal or factual sufficiency, but instead focus our appellate review on whether the plea was provident. *United States v. Cowan*, ARMY 20160031, 2017 CCA LEXIS 633, at *6 (Army Ct. Crim. App. 28 Sep. 2017). "A guilty plea is provident if the facts elicited make out each element of the charged offense." *United States v. Harrow*, 65 M.J. 190, 205 (C.A.A.F. 2007) (citations omitted).

### B. Enactment of Article 112a

Congress developed Article 112a by drawing upon provisions in the Comprehensive Drug Abuse Control Act of 1970 (Drug Act), which it enacted to combat the escalating rate of drug use during the late 1970's and early 1980's. *See* 21 U.S.C. § 801-904, § 841; *see also United States v. Inthavong*, 48 M.J. 628, 631-32 (Army Ct. Crim. App. 1998). There were two important factors underlying the development of Article 112a, UCMJ: (1) Congressional desire to incorporate the Drug Act's flexibility into the UCMJ to provide an effective disciplinary tool for commanders; and (2) the preference to align military law with civilian practice in prosecuting drug offenses, especially "that in the Federal District Courts." *Inthavong*, 48 M.J. at 632.

Since its enactment, Article 112a has remained substantively unchanged over the past thirty-six years. In order to be guilty of the offense of distribution of a controlled substance under Article 112a, the government must show beyond a reasonable doubt that: (1) the accused distributed a certain amount of a controlled substance; and (2) the distribution was wrongful. *Manual for Courts-Martial, United States* (2016 ed.) [*MCM*, 2016], pt. IV ¶ 37.b.(3). "Distribute" means to deliver to the possession of another. *Id.* at ¶ 37.c.(3). "Deliver" is defined as the actual, constructive, or attempted transfer of an item, whether or not there exists an agency relationship. *Id.* In order to prove that the accused effected the distribution of a controlled substance, the government must show active, constructive, or

attempted delivery by the accused to another. *See United States v. Frazier*, 30 M.J. 1231 (A.C.M.R. 1990).

## C. *Interpretation of "Distribute" in Federal Courts*

Given that Congress based the definitions in Article 112a upon the Drug Act, it is appropriate to consider the Drug Act's definition of "distribute." While the definitions in the Drug Act are worded differently than those in Article 112a, they do not differ substantively. The Drug Act defines "distribution" as "delivering (other than by administering or dispensing) a controlled substance or actual chemical." 21 U.S.C. § 802(11). "Delivery" refers to "the actual, constructive, or attempted transfer of a controlled substance or listed chemical, whether or not there exists an agency relationship." 21 U.S.C. § 802(8).

Several federal circuits, citing congressional intent, have construed "distribution" broadly, finding a multitude of acts may constitute "distribution." *See United States v. Cortes-Caban*, 691 F.3d 1, 17 (1st Cir. 2012); (Distribution of drugs may be accomplished by giving them away for free); *United States v. Cormier*, 468, F.3d 63, 70 n.3 (1st Cir. 2006); *United States v. Fregoso*, 60 F.3d 1314, 1325 (8th Cir. 1995); *United States v. Vincent*, 20 F.3d 229, 233 (6th Cir. 1994). Even the mere act of sharing a controlled substance with another individual may constitute "distribution" under the Drug Act. *See United States v. Speer*, 30 F.3d 605, 608-09 (5th Cir. 1994); *United States v. Washington*, 41 F.3d 917, 919 (4th Cir. 1994); *United States v. Wright*, 593 F.2d 105, 108 (9th Cir. 1979). The court in *Wright* concluded, "Congress intended to prevent individuals from acquiring drugs for whatever purpose on behalf of others and then transferring the drugs to those others." *Id.*; *see also Speer*, 30 F.3d at 608-09.

## D. *The Swiderski Rationale*

The broad interpretation of "distribution" was tempered by the Second Circuit Court of Appeals in *United States v. Swiderski*, 548 F.2d 445 (2d Cir. 1977). The court in *Swiderski* held that two individuals who simultaneously and jointly acquire possession of a drug solely for their own shared personal use are criminally liable of possession, not possession with intent to distribute. *Id.* at 450. In *Swiderski*, the defendant, Swiderski, and his fiancé, jointly purchased cocaine from a supplier. *Id.* at 448. Swiderski handed cash to the supplier and then placed the cocaine in his pocket. *Id.* Later in the evening, law enforcement located the cocaine in the fiancé's purse during a search incident to arrest. *Id.* In reversing the convictions of Swiderski and his fiancé for possession with intent to distribute, the court reasoned that "[since] both acquire[d] possession from the outset and neither intend[ed] to distribute the drug to a third person, neither serve[d] as a link in the chain of distribution." *Id.*

The court in *Swiderski* noted that joint possession[3] "does not pose any of the evils which Congress sought to deter and punish through the more severe penalties provided for those engaged in a 'continuing criminal enterprise' or in drug distribution." *Id.*

The *Swiderski* court relied upon the concept of constructive possession in determining that the two individuals jointly possessed the cocaine, regardless of whether it was physically contained in Swiderski's pocket or his fiancé's purse.[4] The court recognized that "possession of a controlled substance may be shared with others and that it may be established by evidence of actual, physical possession or on the basis of the power to exercise control over the substance." *Id.* at 449 n.2 (citing *Davis*, 461 F.2d 1026).

Ultimately, the *Swiderski* court was not persuaded, and neither are we, that the term "transfer," as used in the Drug Act, was intended to "include the exchange of physical possession between two persons who jointly acquired and hold the drug for their own use." *Id.* at 450. The *Swiderski* court made clear that its holding should be narrowly construed and "is limited to the passing of a drug between joint possessors who simultaneously acquired possession at the outset for their own use." *Id.* at 450-51.

Since the Second Circuit decided *Swiderski*, other federal circuits have approved of the *Swiderski* rationale.[5] *See, e.g. United States v. Layne*, 192 F.3d 556,

---

[3] The Second Circuit acknowledged that joint possession alone does not preclude a potential distribution conviction and that "[w]hether such an inference may be drawn depends upon the surrounding circumstances, including the nature of the relationship (whether it is commercial rather than personal), the quantity of the drug (whether it is too large for personal use only), the number of people involved, and statements or conduct on the part of the defendants. *Swiderski*, 548 F.2d at 450.

[4] Constructive possession occurs when "[a] person who, although not in actual possession, knowingly has both the *power and the intention* at a given time to exercise dominion or control over a thing, either directly or through another person or persons." *United States v. Blackston*, 940 F.2d 877, 883 (3d Cir. 1991) (citation omitted). Such dominion and control need not be exclusive but may be shared with others. *United States v. Davis*, 461 F.2d 1026, 1035 (3d Cir. 1972) (holding that circumstantial evidence supported conviction of possession of heroin for multiple individuals found in close proximity of the heroin in an apartment).

[5] States courts have also addressed this issue and approved of the reasoning in *Swiderski*. *People v. Coots*, 968 N.E.2d 1151, 1162 (Ill. 2012); *State v. Morrison*,

(continued . . .)

599 (6th Cir. 1999); *United States v. Hardy*, 895 F.2d 1331, 1334-35 (11th Cir. 1990); *United States v. Rush*, 738 F.2d 497, 514 (1st Cir. 1984).

Of particular note, the Court of Appeals for the Seventh Circuit adopted the *Swiderski* rationale in vacating a conviction for distribution of heroin. *United States v. Weldon*, 840 F3d 865, 866 (7th Cir. 2016). In *Weldon*, three individuals pooled money and rode in the same car together to jointly and simultaneously purchase heroin from Weldon's drug dealer. *Id*. at 865. At the meeting location, Weldon exited the vehicle, walked to the drug dealer's vehicle, purchased the heroin, returned to vehicle in which he arrived and handed the heroin to another individual. *Id*. at 866. Weldon and the other two individuals then went to a residence where they injected the heroin. *Id*. In holding that Weldon had not distributed heroin, the court reasoned:

> [I]t would have been *absurd* for all three to have gone up to the drug dealer and each pay him separately, and even more *absurd* for them to have carried the minute package, containing less than half a gram of powder, together to the car and from the car to [one of the individual']s residence.

*Id*. (emphasis added).

In sum, the *Swiderski* and *Weldon* rationale focus on whether or not the individual to whom a defendant is charged with distributing was also a participant in the same transaction and co-possessor. If so, it strikes us "absurd" to treat such an interaction as a distribution. Perhaps, it is best considered an "aggravated use," and a matter for sentencing. *See, e.g., Ratleff*, 34 M.J. at 81.

### E. The Broad Interpretation of "Distribute" in Military Courts

Given the congressional intent to align military prosecution of drug offenses with federal practice, military courts have appropriately turned to federal courts for guidance on the meaning of distribution in Article 112a. *United States v. Speer*, 36 M.J. 997, 999 (C.M.R. 1993) (noting interpretation of Article 112a is to be informed by federal sources analyzing the Drug Act). Military courts have adopted the federal courts' approach, broadly interpreting "distribute," and imposing criminal liability for wrongful distribution of a controlled substance where an individual acts as a middleman or facilitator to a drug transaction. *See, e.g., Ratleff*, 34 M.J. 80; *United*

---

(. . .continued)
902 A.2d 860, 866 (N.J. 2005); *State v. Lopez*, 359 819 A.2d 486, 493-94 (N.J. 2003).

*States v. Hill*, 25 M.J. 411 (C.M.A. 1988); *United States v. Esperonceda*, 36 M.J. 535 (A.F.C.M.R. 1992).

Our Superior Court, however, has expanded its interpretation of distribution to reach a service member who provides drugs back to the individual who initially provided the drugs to the service member. *Ratleff*, 34 M.J. at 82. In *Ratleff*, Private First Class (PFC) Ratleff accompanied another soldier to the mess hall where the other soldier had hidden a can of marijuana hashish. *Id.* at 81. The other soldier retrieved the can of hashish and then he and Ratleff walked back to PFC Ratleff's room together. *Id.* Private First Class Ratleff tore open the can of hashish, extracted the substance and handed it to the other soldier. The two smoked the hashish together. Private First Class Ratleff was convicted consistent with his pleas of distribution of the hashish to the other soldier. *Id.* On appeal, PFC Ratleff attempted to argue that he and the other soldier had jointly possessed the hashish so there was no distribution, or in the alternative, that only the other soldier could be found guilty of distribution. *Id.* at 82.

Our Superior Court expressly rejected PFC Ratleff's argument that he and the other soldier jointly possessed the hashish. Despite PFC Ratleff not being the owner of the hashish, the court found that by taking possession of the hashish while it was in the container, removing it from the container, and passing the hashish back to its original owner, PFC Ratleff "delivered" the hashish to his friend and was guilty of distribution. *Id.* The court noted the military judge considered PFC Ratleff's "*technical distribution*" as an aggravated use. *Id.* at 82 (emphasis added).

### F. Application of the Swiderski Rationale to Appellant's Case

If unbound by precedent, we would find this case analogous to both *Swiderski* and *Weldon*, and would similarly hold that no statutory "transfer" occurs between two individuals who simultaneously and jointly acquire possession of a drug solely for their own personal use and never distribute any of the drug to a third person. We would find that such individuals are criminally liable for the offenses of possession and/or use of a controlled substance under Article 112a, but not distribution.[6]

---

[6] We note that no military appellate court, including this one, has applied the *Swiderski* rationale to Article 112a, yet each of the service appellate courts and our Superior Court have faced arguments for its application. While military courts have declined application of the *Swiderski* rationale, we find those cases factually distinguishable from appellant's case. *See, e.g., United States v. Tingler*, 65 M.J. 549, (N.M. Ct. Crim. App. 2006) (expressly rejecting application of *Swiderski* to drug offenses under the UCMJ and recognizing *Ratleff*'s holding affirming a distribution back to the source); *United States v. Esperonceda*, 36 M.J. 535

(continued . . .)

The simultaneous and joint acquisition of cocaine by both appellant and SPC SM constituted joint possession by the soldiers at the moment of purchase.[7] Appellant and SPC SM drove to Nashville together, pooled their money to purchase cocaine for personal use, went into the drug dealer's home together, purchased the cocaine together, and then drove back to Fort Campbell where they jointly ingested the cocaine the same night. Given that SPC SM intended to purchase cocaine for his own use, at the same time as appellant, he had constructive possession of the cocaine at the time of the completion of the transaction until ingestion. Therefore, appellant

---

(. . .continued)

(A.F.C.M.R. 1992) (holding that *Swiderski* does not apply to those who act as a "link" or middleman in the link of the chain of distribution); *United States v. Hill,* 25 M.J. 411, 414-15 (C.M.A. 1988) (holding that appellant's plea to distribution was provident because his admissions that he supplied money demanded by the seller aided the seller in completing the transaction thereby drawing additional participants into the web of drug abuse); *United States v. Tuero,* 26 M.J. 106 (C.M.A. 1988) (holding *Swiderski* inapplicable to appellant's case because appellant expressly conceded he was not asserting *Swiderski* and appellant did not simultaneously acquire cocaine with his co-conspirator nor was the cocaine acquired for strictly personal use); *United States v. Bennett,* 26 M.J. 173 (C.M.A. 1988) (summarily upholding appellant's plea that he collected money, purchased drugs, and distributed the drugs to members of his unit).

[7] We recognize that the *Swiderski* rationale does not protect an agent who, by performing services for his principal, lengthens the chain of distribution of drugs. *Swiderski,* 548 F.2d at 451. In situations in which a service member acquires a drug himself, then transfers possession to another, he acts as a "middleman or facilitator" and thereby serves as a link in the chain of distribution and may be held criminally liable for wrongful distribution of a controlled substance as service appellate courts have recognized. *See United States v. Bennett,* 26 M.J. 173 (C.M.A. 1988). Acting as a middleman in a drug sale *is* the type of conduct which Congress aimed to criminalize as wrongful "distribution." This court applied the criminal concept of agency in our decision in *United States v. Viser,* rejecting the application of the *Swiderksi* rationale to that case. 27 M.J. 562 (A.C.M.R. 1988). Because PFC Viser was the person who physically handed the money to the drug dealer and received the cocaine while another soldier waited in the car, this court found the other soldier did not have possession of the cocaine until PFC Viser handed it to him. *Id.* Therefore, we affirmed PFC Viser's plea of guilty to distribution. *Id.* In *Viser,* we agreed with the *Swiderski* holding that explicitly rejects protection of the agent who procures drugs for any principal *not present* when the agent takes *possession* of drugs. In contrast to *Viser,* SPC SM was present by appellant's side when appellant purchased the drugs.

*technically* could not transfer the cocaine to SPC SM back at the barracks at Fort Campbell since SPC SM *technically* possessed it from the moment of purchase.

While the drug dealer physically handed the small amount of cocaine to appellant during the purchase, SPC SM was physically present with appellant when the transaction occurred and never left appellant's presence between acquisition and ingestion. Specialist SM had the power and intent to exercise control over the cocaine until such time as they ingested it together upon return to Fort Campbell. We believe it would be "absurd" for appellant and SPC SM to have carried a small package of cocaine together to the car and hold it together during the ride back to Fort Campbell in order to find joint possession. *See, e.g., Weldon*, 840 F.3d at 866-67.

We acknowledge, like the Second Circuit in *Swiderski*, that joint possession alone does not preclude a potential distribution conviction. We would consider "the surrounding circumstances, including the nature of the relationship (whether it is commercial rather than personal), the quantity of the drug (whether it is too large for personal use only), the number of people involved, and statements or conduct on the part of the defendants." *Swiderski*, 548 F.2d at 450. In the instant case, appellant and SPC SM were soldiers in the same unit who had a personal relationship and who jointly purchased a small amount of cocaine together for the sole purpose of their own use. Given the circumstances in this case involving only two service members who agreed to jointly purchase a small amount of cocaine for their own personal use and who were together from the time of purchase to ingestion, we would find there is no basis for finding them criminally liable for distribution to each other when each had a possessory right to the drug at the time of purchase.

Appellant and SPC SM were co-equals in the transaction and neither served as a middleman or facilitator for the other in obtaining the cocaine. In situations in which a service member acquires the drug himself, then physically transfers possession to another, he acts as a "middleman or facilitator," and thereby serves as a link in the chain of distribution and should be held criminally liable for wrongful distribution of a controlled substance. In that situation, one person has taken a more active role in acquiring the drugs for another person serving as an "agent who, [by] deliver[ing] to his principal performs a service in increasing distribution of narcotics." *Id.* at 451.

Bound by *Ratleff*, we are compelled to affirm appellant's conviction of distribution under Article 112a, UCMJ. According to our Superior Court's reasoning in *Ratleff*, when appellant handed SPC SM the cocaine, it constituted a transfer of possession, satisfying the elements of distribution under Article 112a, UCMJ. *Ratleff*, 34 M.J. at 82. Though we affirm appellant's conviction, we are not convinced that Article 112a, UCMJ, was intended to label drug users such as

appellant as drug distributers. Such a result exaggerates the criminality of simple drug users and seems out of touch with congressional intent.

We suggest the time has come for our Superior Court to readdress its "technical construction" of Article 112a in the *Ratleff* decision in light of the facts surrounding appellant's actions.

## CONCLUSION

The findings of guilty and sentence are AFFIRMED.

Senior Judge ALDYKIEWICZ and Judge SALUSSOLIA concur.

Judge SALUSSOLIA, concurring:

I concur with the holding of the majority opinion in that appellant's convictions and sentence should be affirmed.  However, I write separately to note that I do not believe this case is the proper vehicle for our Superior Court to determine whether it should depart from the long standing precedent in *Ratleff*. *See, e.g., United States v. Anderson*, 77 M.J. 393, 399 (C.A.A.F. 2018) (emphasizing the importance of adhering to precedent "[that] has been treated as authoritative for a long time . . . . unless the most cogent reasons and inescapable logic require it").

While I share my colleague's general concern regarding the applicability of the offense of wrongful distribution of a controlled substance under Article 112a, UCMJ, in a situation where two individuals shared a controlled substance that they jointly purchased and possessed, I believe it is more appropriate for the legislative branch to address this issue.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

10