UNITED STATES

v.

**John P. FITZGERALD, 231 70 5448, Ship's Serviceman Seaman Recruit (E-1), U. S. Navy.**

**NMCM 81 1047.**

U. S. Navy-Marine Corps Court of Military Review.

19 March 1982.

---

Linda J. Ravdin, Esq., Individual Defense Counsel.

LT. Georgia L. Winstead, JAGC, USNR, Appellate Defense Counsel.

CDR. Jay M. Siegel, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, C. J., and GORMLEY and MAY, JJ.

CEDARBURG, Chief Judge:

On 27, 28, and 29 May 1980, at Naval Legal Service Office, Washington Navy Yard, Washington, D. C., appellant was tried by a special court-martial composed of officer members. Contrary to his pleas, he was convicted of unauthorized absence from 5 June 1979 to 11 December 1979, in violation of Article 86 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886. He was sentenced to a bad-conduct discharge. The convening authority and supervisory authority approved the sentence as adjudged.

The appellant now posits three assignments of error for consideration by this Court.

There was no dispute at trial that the appellant was in fact in an unauthorized absence status from the USS SANTA BARBARA from 5 June 1979 to 11 December 1979. The appellant terminated his unauthorized absence by surrendering himself on 11 December 1979 to authorities at the National Naval Medical Center, Bethesda, Maryland. The defense interposed by the appellant was insanity.

I

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE ACCUSED BY EQUATING SUBSTANTIAL DOUBT AND REASONABLE DOUBT IN HIS INSTRUCTIONS TO THE COURT MEMBERS.

There was no dispute regarding the unauthorized absence alleged. The only dispute concededly revolved around appellant's mental competency at the time of the alleged offense. Testimony was received regarding appellant's mental competency from three medical witnesses. The Government presented the testimony of a medical doctor, a resident in psychiatric training, who conducted the "intake interview" of appellant at the time of his admission to the National Naval Medical Center, Bethesda, Maryland, and was the psychiatric ward medical officer and principal evaluator during appellant's stay from 11 November 1979 to 4 January 1980 in the naval hospital for psychiatric evaluation and treatment. Tes-

timony was also introduced by the Government from the staff psychiatrist who also conducted an "intake interview" and supervised the course of evaluation and treatment. The defense presented testimony from a civilian psychiatrist who conducted a psychiatric evaluation of appellant on the basis of separate interviews with appellant and his parents utilizing the reports of a civilian psychologist and a psychiatrist who was rendering therapy, the psychiatric record developed at the National Naval Medical Center, and letters written by appellant to his parents.

All three medical witnesses were in agreement that appellant suffered from a severe passive-aggressive personality disorder; the civilian psychiatrist concluded appellant also suffered from a depressive neurosis. The defense psychiatrist was of the opinion that appellant lacked substantial capacity to conform his conduct to the requirements of law. During cross-examination the defense psychiatrist was unwilling to relate his opinion in regard to a lack of substantial capacity to either of the diagnosed conditions separately, but based his opinion on both the depressive neurosis and passive-aggressive personality disorder he had diagnosed. He did opine, however, that each could be equally incapacitating. The Government witnesses testified that they found no evidence of a depressive neurosis. They expressed an opinion that appellant was able to appreciate the criminality of his conduct and to conform his conduct to the requirements of law. In rebuttal to the testimony of the Government medical witnesses, the defense recalled their expert witness, who had again reviewed appellant's service records. He concluded after his reexamination that they represented a manifestation of a passive-aggressive personality and restated his opinion that appellant lacked substantial capacity to conform his behavior to requirements of the law. While in no manner withdrawing his separate diagnosis of a depressive neurosis, which, during the prosecution testimony was described by the supervising psychiatrist as a more severe malady than a personality disorder only because of its life-threatening continuum rather than an impairment continuum, he based his opinion separately on the existence of a passive-aggressive personality disorder as to which there was no disagreement by any of the expert witnesses. The effect of the totality of the expert testimony, in accord with the thrust expressed in both the defense opening statement and argument prior to findings, as well as that of the Government, was that the diagnoses of both the Government and defense witnesses were consistent; the only significant difference was in their opinions regarding the ultimate issue as to whether appellant was able to conform his conduct to the requirements of law.

The military judge in his instructions specifically addressed the standard of proof which the Government must satisfy in regard to appellant's mental responsibility. He repeatedly stressed the requirement of the Government solely in terms of proof beyond a "reasonable doubt" in respect to the two-step process of finding a mental disease or defect, and the substantial capacity to appreciate the criminality of his conduct and conform his conduct to the requirements of law. We find that although these terms were repeatedly used in the instruction, reasonable doubt was neither equated to "substantial doubt" nor was "substantial" equated to "reasonable" in his specific addressal of the issue of mental competency. In his concluding instruction, pursuant to Article 51(c), UCMJ, 10 U.S.C. § 851(c), the military judge announced, after extensive instructions covering over eleven pages, to which the defense offered no objection as finally given, a definition of reasonable doubt which included the following:

Now, by reasonable doubt is intended not a fanciful or ingenious doubt or conjecture but substantial, honest, conscientious doubt suggested by the material evidence or lack of it in the case. It is an honest, substantial misgiving generated by insufficiency of proof of guilt.

Counsel for the appellant objected to this particular portion of the instruction and

proposed an instruction which deleted the word "substantial" in the two instances in which it was used. The military judge, in reliance upon the standard instruction in the *Military Judges' Guide, DA Pam. 27–9* (19 May 1969), para. 2–4, and 3 months before the decision of the Court of Military Appeals, criticizing the identical instruction in *United States v. Salley*, 9 M.J. 189 (C.M.A.1980), overruled the objection. No objection was made to additional language utilizing the phrase "willing to act", also used in the instruction for which the Court of Military Appeals expressed disapproval in *United States v. Cotten*, 10 M.J. 260 (C.M.A. 1981).

The Court of Military Appeals in deciding *United States v. Salley, supra*, characterized the identical instruction as "confusing" and disapproved its future use: they declined to reverse the conviction, concluding that there had been no objection to the instruction, and that under the facts of the case the accused was not prejudiced. In *United States v. Cotten, supra*, the Court of Military Appeals found prejudicial error in equating "substantial doubt" with "reasonable doubt" under the particular facts of that case, a highly contested drug case with contraverted testimony from two Government witnesses and a complete denial of the charges of which the accused was convicted. The trial counsel further had urged the members to believe that the evidence was "clear and convincing." A proper objection to the equation of reasonable doubt with substantial doubt had been made.

While the equation of "substantial doubt" with "reasonable doubt" is present in the instant case, and a timely and proper objection was made, strongly controverted testimony regarding matters of a factual nature, argument of trial counsel suggesting a lesser standard, and a denial of the charge upon which the conviction is based are not factors herein which would support prejudice from the use of the disapproved instruction. There is no contest as to the unauthorized absence, no controverted witnesses to that issue; in fact no denial of the charge. The psychiatric testimony of both the Government and defense expert witnesses was largely consistent in the diagnosis of a severe passive-aggressive personality disorder. The conclusion of the defense psychiatrist that appellant, in addition to the diagnosis of the Government experts, with which he agreed, also suffered from a depressive neurosis added little weight in respect to the mental impairment continuum which was the concern of the court members. The Government supervising psychiatrist had testified a depressive neurosis was "more severe" than a passive-aggressive personality because of its life threatening continuum, rather than its impairment continuum, and in his rebuttal testimony, the defense psychiatrist expressed the opinion that the passive-aggressive personality disorder was the basis for his conclusion that appellant was unable to conform his conduct to the requirements of law. The court members simply had to give credence to one or the other of the opinions advanced by the defense or Government expert witnesses as to the effect of appellant's disorder on the ultimate issue of mental responsibility for the admitted offense. *See United States v. Schaeffer*, No. 80 0816 (NMCMR 29 September 1981) (unpublished). For the foregoing reasons, together with a contextual reading and application of all of the instructions given in the case, we find that, while error, the use of "substantial doubt" in equation with "reasonable doubt" was harmless and did not substantially prejudice the appellant.

Accordingly, this assignment of error is without merit.

## II

A BAD–CONDUCT DISCHARGE IS NOT WARRANTED HERE, WHERE THE EVIDENCE WAS UNDISPUTED THAT THE ACCUSED HAD A SEVERE PERSONALITY DISORDER THAT RENDERED HIM UNABLE TO ADJUST TO MILITARY LIFE.

 Appellant was convicted of an unauthorized absence of over six months. This, standing alone, is a very serious offense within the military where discipline and readiness are essential. In addition to

the instant court-martial conviction, the appellant had received nonjudicial punishment on three occasions during his current enlistment, for a variety of offenses including drunk and disorderly conduct, attempt to escape from lawful apprehension, failure to go to an appointed place of duty, disobedience of a lawful order, and absence from an appointed place of duty. The appellant was sentenced to a bad-conduct discharge. No other punishment was adjudged. It is well settled that sentencing should be individualized for each accused. *United States v. Mosely*, 1 M.J. 350 (C.M.A.1976). The determination of a proper punishment rests within the discretion of the court, subject to the limitations prescribed in Chapter XXV, *Manual for Courts-Martial, 1969 (Rev.)* (MCM), and by the particular article of the UCMJ violated. Paragraph 76a, MCM. To the extent punishment is discretionary, the sentence should provide a legal, appropriate, and adequate punishment. The fact that the appellant suffered from a passive-aggressive personality disorder, and not pretermitting a depressive neurosis, was considered by the court members in arriving at what it considered to be a just and appropriate sentence. This Court recently stated "... the appellate process ... should not disturb the sense of justice of the community where the crime was committed unless the harshness of the sentence is so disproportionate as to cry out for sentence equalization." *United States v. Usry*, 9 M.J. 701, 704 (N.C.M.R.1980). In our independent determination of the legality and appropriateness of sentence, considering the nature of the offense, the past disciplinary record of the appellant, the evidence regarding appellant's mental responsibility and all else that was before the court, we find a bad-conduct discharge to be warranted.

### III

THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW AND FACT TO SUPPORT A CONVICTION WHERE EVIDENCE OF INSANITY WAS NOT EFFECTIVELY REBUTTED.

■ The issue of appellant's sanity was appropriately framed by the military judge in his instructions to the court where he charged that first a determination had to be made if the appellant suffered from a mental disease or defect. If so determined, the members were then directed to determine if, as a result of such disease or defect, the appellant lacked substantial capacity either to appreciate the criminality of his conduct or, even if he did, whether he lacked substantial capacity to conform his conduct to the requirements of the law. The military judge further instructed that the burden of proof regarding these questions was on the Government, and if the court, after considering all the evidence, had a reasonable doubt as to appellant's mental responsibility at the time of the alleged offense, it must find him not guilty. The three officer member court had received testimony from three doctor witnesses on the question of the accused's sanity, and obviously resolved the issue by its finding of guilty, which required a concomitant finding by the members during their deliberations that appellant was sane beyond a reasonable doubt. Resolution of the ultimate issue of appellant's mental responsibility was the province of the court and was narrowed to acceptance or rejection of the opinions regarding the effect of appellant's mental condition, as diagnosed by the medical witnesses, on his ability to substantially appreciate the criminality of his conduct and to conform his conduct to the requirements of law. The law regarding mental responsibility was fully instructed upon by the military judge. There is evidence of record beyond a reasonable doubt to sustain the findings of the court, and we so find. Accordingly, we find this assignment of error to be without merit.

The findings and sentence as approved on review below are affirmed.

Judge GORMLEY and Judge MAY concur.