### UNITED STATES

v.

**Senior Airman Abdul K. ERBY, FR381–78–9877 United States Air Force.**

**ACM32391.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 25 June 1996.

Decided 25 April 1997.

Appellate Counsel for Appellant: Colonel David W. Madsen, Lieutenant Colonel Kim L. Sheffield, and Captain Marge A. Overly.

Appellate Counsel for the United States: Colonel Theodore J. Fink, Lieutenant Colonel Michael J. Breslin, and Major Karen L. Manos.

Before PEARSON, MORGAN, C.H., II, and MORGAN, J.H., Appellate Military Judges.

### OPINION OF THE COURT

MORGAN, C.H., II, Judge:

By creating fictitious names, social security numbers, and travel orders, then inputting them into Air Force computer records to authorize electronic funds transfer to his own

account, appellant, who was a finance clerk, embezzled nearly $24,000 of government funds. A military judge sitting alone as a general court-martial convicted appellant pursuant to his pleas of five specifications each of larceny, forgery, and uttering a forged document. He sentenced him to a dishonorable discharge, confinement for 3 years, a $10,000 fine, total forfeitures, and reduction to the lowest enlisted grade. He added up to 1 year additional confinement if the fine were not paid. Although a pretrial agreement limiting confinement to no more than 38 months did not factor, the convening authority responded to appellant's plea for clemency by changing the character of the discharge to a bad-conduct discharge, and limiting the contingent additional confinement if the fine were not paid to 2 months. He otherwise approved the sentence as adjudged.

Appellant brings three assignments of error: (I) that the offenses of forgery and uttering the documents forged were multiplicious with the larceny offenses; (II) that his sentence is unduly severe; and (III) that his sentence was unconstitutionally aggravated in violation of the *Ex Post Facto* clause of the Constitution. Finding no merit to any of the assignments of error, we affirm.

*Facts*

Appellant began his larcenous adventure while stationed at Dyess Air Force Base, Texas. On March 1, 1995, while working in the Travel Pay section of the base finance office, he took a completed computer diskette which tabulated travel payments, after accounts were reconciled at the end of the business day, and surreptitiously created an additional $4200 entry against a fictitious travel voucher, using a thinly disguised alteration of his name, "K.A. Erbi," his own social security number, and the numeric code directing payment to his personal account at the Dyess Credit Union. He then took this altered diskette over to the Pay and Collection branch, who processed it for payment. In due course, the funds were electronically transferred to his account. Since there was no actual travel voucher against this pay-

ment, appellant hand-wrote an entry voiding the phony voucher.

He reprised this method on March 10, 1995. This time the phony name was "A. Erry." Rather than make up a travel voucher, he transferred information from an actual travel voucher filed by a staff sergeant. He took in an additional $3,360.82.

By August of 1995 appellant had been transferred to Kadena Air Base, Japan. Here he refined his technique. Evidently realizing that the absence of verifiable vouchers against the payment documents might well lead to his discovery, he took the actual Permanent Change of Station (PCS) orders of an active-duty lieutenant colonel home with him. Armed with white-out, scissors, and tape, he doctored those orders by creating a fictitious name. Rather than use his own social security number, he made one up, but again used his own credit union account number. He then created an advance travel pay authorization against the phony PCS order. Despite the made-up social security number the scheme worked and $6,640.40 transferred to his account.

The technique improved still further in October of that year. He again used the PCS orders of an active-duty captain to cut a phony set of orders in a fictitious name. Again he made up a social security number but entered the correct code for his personal account number. To add to the advanced PCS entitlement, he made up a wife and three children, complete with birthdates. This too worked, and appellant collected $3,635.20.

Appellant's final strike came in November of 1995. By this time he had the routine down pat. He again took the orders of somebody going PCS and again used a fictitious social security number, and thus had $6,134.04 transferred to his account.

*I. Multiplicity*

Even though appellant successfully completed an exhaustive providence inquiry on each of the specifications and the charge, during the sentencing argument at trial appellant's lawyer characterized his crimes as essentially five larcenies.

[T]his case basically boils down to five larcenies, five larcenies from the government. Obviously, there is conduct involved in order for him to take the money. But if you look at the charges, obviously we can't control the way they want to charge things. I guess each time you punch the computer—the button, they could charge you with a separate offense thanks to Teeters (sic) and company. The fact is, look at the underlying conduct, your Honor. We have the steps taken and the ultimate larceny on five occasions, and five occasions only.

Now on appeal appellant seeks to formalize as error that which he conceded informally at trial. Specifically he alleges that the forgery and uttering of the electronic documents are multiplicious with the larceny. This, according to appellant, was but a single course of conduct and should not, therefore, be separately punished. Rather than cite any case dealing with these offenses in terms of *multiplicity*, appellant points us to R.C.M. 307(c)(4), which speaks in terms of the *unreasonable multiplication of charges*. Because there is a difference between those two concepts, it is worthwhile to examine appellant's arguments more closely.

We could dispose of this case simply on the principle of waiver. In a superbly crafted reply brief, the government answers that multiplicity claims are waived by a provident guilty plea unless the offenses charged are factually the same thing, that is, that the failure to correct multiplicious charging is so egregious as to amount to "plain error." *United States v. Lloyd*, 46 M.J. 19 (1997), *citing United States v. Broce*, 488 U.S. 563, 575, 109 S.Ct. 757, 765–66, 102 L.Ed.2d 927 (1989) (guilty plea waives double jeopardy claim unless "facially duplicative"). At trial appellant made no motion in terms of multiplicity and entered provident pleas of guilty to each of the fifteen separate specifications covering the five incidents of cybernetic larceny. The only question remaining is whether the crimes as charged are facially duplicative.

 Fortunately we do not have to look far for the answer. Neither do we have to decide what "facially duplicative" means,

since authoritative precedent establishes that the charging in this case was not multiplicious. The larceny charges are not multiplicious with the forgery charges, even if the forgery is the mechanism whereby the larceny is accomplished. *United States v. Teters*, 37 M.J. 370, 377–78 (C.M.A.1993); *see also United States v. Oatney*, 45 M.J. 185 (1996) (rejecting *actus reus* theory of multiplicity). Further, uttering the various forged electronic documents was not multiplicious with their forgery. *United States v. Albrecht*, 43 M.J. 65, 68 (1995). The question is whether charging the larceny, *and* forgery, *and* uttering the same forged documents used to effect the larceny, constitutes an unreasonable multiplication of charges, and whether the military judge was required *sua sponte* to do something about it if appellant made no complaint at trial.

 As the government points out, there is an aspect to multiplicity analysis which transcends the double jeopardy prohibitions of the Constitution, and looks instead to an equitable restraint on prosecutorial enthusiasm. Where, as here, it may be constitutionally permissible to charge certain misconduct that offends different statutes, under certain circumstances it may be *unreasonable* to do so, at least in the context of sentencing. *See* R.C.M. 307(c)(4) (Discussion) ("what is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person"); R.C.M. 1003(c)(1)(C) (Discussion) ("offenses rising out of the same transaction may be multiplicious for sentencing depending on the evidence").

Whether this language in the Manual, which pre-dates recent developments in the law from the Court of Appeals for the Armed Forces, survives as an independent rationale for finding legal error is open to question, but on balance it appears that it does. *Compare Oatney*, 45 M.J. at 190 (Cox, C.J., dissenting, "piling on!"); *United States v. Foster*, 40 M.J. 140, 144 n. 4 (C.M.A.1994) (*Teters* notwithstanding, military judges must still exercise sound judgment to ensure that imaginative prosecutors do not needlessly pile on charges against a military accused).

We have, on occasion, suggested that there are equitable considerations within the discretion of the trial judge when it comes to sentencing, although we have not tied those considerations in so many words to the above-cited admonitions in the Rules for Courts–Martial. *See, e.g., United States v. Roberson,* 43 M.J. 732, 734 (A.F.Ct.Crim. App.1995) (more is not always better); *United States v. Clinkenbeard,* 44 M.J. 577, 579 (A.F.Ct.Crim.App.1996) (equity does not support exposing airman to federal conviction for traffic offense), *pet. denied,* 46 M.J. 104 (1996).

On the other hand we have declared that multiplicity analysis, analytically speaking, is the same for sentencing as for findings. *United States v. Dolbow,* 44 M.J. 814 (A.F.Ct.Crim.App.1996). This echoes the approach taken by our Superior Court. *See, e.g., Oatney; United States v. Morrison,* 41 M.J. 482 (1995). The teaching point from all this is that practitioners must distinguish between the constitutional framework underpinning the concept of multiplicity, grounded in analysis of the statutes themselves and the intent of Congress, and the unique attribute of military jurisprudence empowering trial judges to adjust the maximum sentence available in a given case based upon equitable considerations—that is the *unreasonable* multiplication of charges.

With that understanding, it is plain that a military judge cannot abuse his equitable power to correct an unreasonable multiplication of charges unless it is first invoked by an accused. Here, trial defense counsel correctly (albeit grudgingly) conceded that the law respecting multiplicity cut against him, but went on to argue to the military judge that he was dealing in effect with but five instances of larceny that just happened to be enabled by forgery and uttering forged documents. Because this was a bench trial, we may fairly assume that in adjudging the sentence the military judge considered appellant's pitch in this respect, and sentenced him based upon his view of the severity of appellant's actual behavior, implicitly making any equitable adjustment he thought appropriate. He was required to do no more because appellant asked for nothing more. Should there be any doubt, we repeat: an accused waives any argument respecting an unreasonable multiplication of charges, as distinguished from double jeopardy/multiplicity, by failing to bring it up at trial. *Cf.* R.C.M. 906(b)(12).

## II. Sentence Appropriateness

Next appellant argues that, even if the crimes charged were not multiplicious, he was still treated too severely. We disagree. Lost in appellant's unsworn statement and his submissions to the convening authority was any sense of the gravity or extent of his betrayal. Instead appellant concentrated on how little money he took, and how unworthy the victim. Trial defense counsel deprecated the sum—it was "only" $23,000 "and change." "Had he stole (sic) 50, 75, $100,000.00, that is a different ball park, sir." Likewise, he implied that the United States was not really much of a victim, not to be compared with, say, some "poor old lady" who couldn't afford to have $24,000 stolen from her.

This approach makes no more impression upon us than it did the trial judge. Appellant took advantage of his insider position, extensive training and education, and the explicit trust of his government, to steal from the taxpayer and his employer. That it was so easy underscores the sanctity and the importance of the trust appellant violated. Even so, the convening authority reduced his sentence somewhat. We are unprepared, therefore, to say that the sentence as approved is inappropriately severe.

## III. Ex Post Facto

Appellant's *ex post facto* claims have been resolved adversely to his arguments in *United States v. Pedrazoli,* 45 M.J. 567 (A.F.Ct. Crim.App.1997).

## Conclusion

The approved findings are correct in law and fact, the sentence is appropriate, and the same are

## AFFIRMED.

Senior Judge PEARSON and Judge J.H. MORGAN concur.