**UNITED STATES**

v.

**Charles B. RAY, 456 95 6113, Private First Class (E–2), U.S. Marine Corps.**

**NMCM 98 00117.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 28 July 1997.

Decided 6 July 1999.

LT Dale O. Harris, JAGC, USNR, Appellate Defense Counsel.

LT William C. Minick, JAGC, USNR, Appellate Government Counsel.

SEFTON, Chief Judge:

Appellant was tried on 28 July 1997 by a military judge sitting alone as a special court-martial. Pursuant to his pleas, he was convicted of two specifications of unauthorized absence, three specifications of failure to go to his appointed place of duty, wrongful use of marijuana, and wrongful use of methamphetamine, in violation of Articles 86 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 912(a)(1994). He was sentenced to confinement for 23 days, forfeiture of $250 pay per month for one month, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged, as the pretrial agreement had no effect on the sentence.

We have examined the record of trial, the errors assigned by appellant, and the Government's response. We have also carefully considered the superb arguments of counsel as they presented the case before us *en banc*, and acknowledge the helpfulness of their provision of additional authorities to assist us in arriving at our conclusions. After careful consideration, we conclude the findings and sentence to be correct in law and fact and find no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## Multiplicity Claims

■ Appellant asserts plain error in the failure of the military judge to combine the two illegal drug use specifications into one offense, since they occurred simultaneously. He is mistaken. The record before us demonstrates two separate and distinct criminal impulses: one to unlawfully smoke marijuana, and yet another to choose to add and ingest methamphetamine as an enhancer. Appellant mixed the two separate illegal drugs with his own hands, from separate container sources, into a single unit for smoking. Record at 15–17.

Even if the multiplicity doctrine were implicated, which it is not, the specifications would still not be multiplicious, as they require proof of separate elements. The presence of unlawfully ingested marijuana is central to one specification, while the presence of unlawfully ingested methamphetamine is at the core of the other. *United States v. Oatney*, 45 M.J. 185, 188–89 (1996); MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), Part IV, ¶ 37b(2).

To support his argument that the simultaneous use of controlled substances is multiplicious, appellant relies on our earlier decision in *United States v. Montgomery*, 30 M.J. 1118 (N.M.C.M.R.1989)(*en banc*), and *United States v. Timmerman*, 28 M.J. 531 (A.F.C.M.R.1989).[1] *Montgomery* was based upon the previous standard for evaluating multiplicity claims, known as the "fairly embraced test." *Montgomery*, 30 M.J. at 1119. In *Montgomery*, this court held that the simultaneous use of marijuana and methamphetamine, when charged as two separate offenses under Article 112a, UCMJ, was multiplicious for findings because the two offenses "fairly embrace the factual allegations of the other." *Montgomery*, 30 M.J. at 1120.

The topography of multiplicity, however, has radically changed since *Montgomery* was decided. In *United States v. Teters*, 37 M.J. 370, 376 (C.M.A.1993), our superior Court *specifically rejected* the "fairly embraced" test central to the *Montgomery* court's reasoning, adopting instead the "elements test." *Teters*, 37 M.J. at 376. Under that test, multiple convictions may be obtained for offenses arising out of the same act so long as each offense, "requires proof of an additional fact which the other does not." *Id.* at 377 (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). *Teters* also rejected the "single impulse" test.[2] *United States v. Foster*, 40 M.J. 140, 146 (C.M.A.1994); *see also Oatney*, 45 M.J. at 188; *United States v. Traeder*, 32 M.J. 455, 456–57 (C.M.A.1991).

Appellant stands convicted of having used both marijuana and methamphetamine. In order to convict an accused of the use of marijuana it is necessary to prove that marijuana was used, and in order to convict an accused of the use of methamphetamine it is necessary to prove that amphetamine was used. Without question, one can commit one offense without committing the other. *See Oatney*, 45 M.J. at 188. Appellant has cited no binding precedent decided after *Teters*, and we have found none, that addresses the specific issue he raises here.

■ The Army Court of Criminal Appeals, however, recently decided a related issue. In *United States v. Inthavong*, 48 M.J. 628 (Army Ct.Crim.App.1998), the accused was convicted of two separate specifications, one

---

1. The focus of *Timmerman* was the irregular findings announced by the President of the court-martial, and the authority of the then Court of Military Review to order a proceeding in revision, and is therefore inapposite. *Timmerman*, 28 M.J. at 534–35.

2. Our dissenting colleagues appear to find support for their positions in these discarded theories. The thief who steals from several victims acts on a "single impulse," or his actions are "fairly embraced," as Judge Rolph indicates. Likewise, Judge Cooper finds it "unreasonable" to convict appellant of "two different charges arising from what, in essence is one transac-

tion." In our view, only the specific, articulated provision of the MCM, Part IV, ¶ 46c(1)(h)(ii) breathes life into the example of the thief who steals prolifically on a single occasion, and *not* "common sense, logic, and fundamental fairness." No similar provision exists that provides that windfall to an accused who might line up 5 victims and kill them all with a single shot from a high-powered weapon. Nor does such a windfall apply to one who acts to increase the variety of his ingestions of unlawful drugs to enhance his or her state of intoxication and further denigrate good order and discipline.

alleging the distribution of LSD and the other the distribution of marijuana. The providence inquiry established that he transferred the two different drugs at the same time. *Id.* In upholding the conviction, the Army court applied *Teters,* examined the language of Article 112a, UCMJ, and reviewed relevant decisions of the Circuit Courts of Appeal. The majority found a "clear legislative intent to authorize multiple convictions for the simultaneous distribution of different drugs under Article 112a, UCMJ." *Inthavong,* 48 M.J. at 633. We find this reasoning convincing, adopt it ourselves, and additionally conclude that our decision in *Montgomery*-is no longer good law, and should not be followed. Consequently, we find that the simultaneous use of more than one drug can support convictions as separate offenses under Article 112a, UCMJ.[3]

The Army Court of Military Review earlier upheld a soldier's conviction of two separate offenses where he snorted cocaine and shortly thereafter smoked a marijuana cigarette. *United States v. Bostic,* 20 M.J. 562 (A.C.M.R.1985). In our view, whether such use is simultaneous or following some interval of time does not change the result. Two offenses are made out. To hold otherwise would allow the drug user to partially avoid criminal liability based on the manner and timing of the ingestion of different controlled substances, without regard to the substances being abused. Such a result is inimical to the orderly administration of justice—and to good order and discipline.[4]

Finally, even assuming *arguendo,* that the military judge should have consolidated the two use specifications, the substantial rights of the appellant have not been harmed. Appellant's approved sentence is well below the jurisdictional maximum of the special court-martial that sentenced him. Even if the military judge consolidated the two specifications, it would have been appropriate for the court to consider that appellant had used two different controlled substances when deliberating upon an appropriate sentence. We are therefore convinced that, if the military judge erred, "the original sentence was not affected by the military judge's error at trial." *United States v. Cook,* 48 M.J. 434, 438 (1998).[5]

---

3. We recognize that the application of *Teters* can result in harsh punishment. *See United States v. Morrison,* 41 M.J. 482, 483 (1995). We are also cognizant of the example contained in footnote 3 of that decision suggesting that it would be error to charge possession of two packages of cocaine at the same time and place as separate offenses. *Id.* at 484 n. 3 (citing *United States v. Dixon,* 921 F.2d 194, 196 (8th Cir.1990)). *But see United States v. Richardson,* 86 F.3d 1537, 1552 (10th Cir.1996)(noting that five other Circuits, in addition to the 10th, have found that it would not be error to charge the simultaneous possession of different drugs as separate offenses).

4. We find the dissenters' focus on the statutory elements to be too narrow. Their position contradicts the purposes of both the statutory elements and the pleadings which "inform the accused of the conduct charged to enable the accused to prepare a defense, and to protect the accused against double jeopardy." *United States v. Weymouth,* 43 M.J. 329, 333 (1995). Strict application of the approach advocated by the dissenters would result in all drug use specifications tried at a single court-martial being multiplicious because the statutory elements neither include the specific drug used, the date it was used, or the location of use. Clearly more is involved. For example, if the Government would allege a use of methamphetamine, but prove use of marijuana at trial, no amendment of the specification to conform it to the proof would be allowed over defense objection. *See* RULE FOR COURTS-MARTIAL 604(d), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). If the focus were simply upon the "statutory elements," it would not matter, and such modification should therefore flow unimpeded.

5. We have also considered the issue of the possible unreasonable multiplication of charges—raised for the first time not by the appellant, but by our dissenting colleagues. We resolve the issue against appellant. First, we find it clear that he forfeited the issue by his failing to raise it at trial. We rely upon our superior Court's holding in *United States v. Lloyd,* 46 M.J. 19, 22–23 (1997), for this conclusion. Second, we find no violation of the non-binding policy contained in either R.C.M. 307(c)(4), Discussion, or R.C.M. 1003(c)(1)(C), Discussion. We find it imminently reasonable to hold appellant accountable for having used both marijuana and methamphetamine. We find no violation of public policy in subjecting appellant to punishment for both offenses he committed. Finally, *United States v. Savage,* 50 M.J. 244 (1999), does not dictate another result. In that case, our superior Court examined two specifications, one of which was the lesser included offense of the other. Here, we are faced with a situation where the two specifications in issue are clearly not facially duplicative.

### Sentence Appropriateness

■ Appellant also argues that a bad-conduct discharge, which he unequivocally sought below, is inappropriately severe based upon an analysis of his offenses and the facts and circumstances of his case. His unauthorized absence offenses certainly might have caused us to give serious consideration to his allegation had they appeared alone before us, although such absence is a very serious offense against good order and discipline. *United States v. Fitzgerald*, 13 M.J. 643, 646 (N.M.C.M.R 1982). In combination with the drug uses clear from the record, those offenses become even more clearly indicative of a pattern of misconduct. Appellant's knowing use of two separate illegal drugs clearly demonstrates the type of bad conduct which justifies punitive separation. Drug abuse in the military is inimical to the mission of the armed forces to preserve, protect, and defend our nation. *United States v. Trottier*, 9 M.J. 337, 346 (C.M.A.1980).

The sentence was legal and is appropriate. *United States v. Turner*, 14 C.M.A. 435, 437, 34 C.M.R. 215, 217, 1964 WL 4998 (1964); RULE FOR COURTS-MARTIAL 1002, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find[ ] correct in law and fact and determine[ ], on the basis of the entire record, should be approved." Art. 66(c), UCMJ. We do not determine matters of clemency, which is what appellant now seeks. That is the prerogative of the convening authority. *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A.1988); R.C.M. 1107(b). An appropriate sentence results from an "individualized consideration" based upon "the nature and seriousness of the offense and the character of the offender." *United States v. Snelling*, 14 M.J. 267 (C.M.A.1982); *see also United States v. Varacalle*, 4 M.J. 181, 183 (C.M.A.1978).

We likewise view appellant's request for a punitive discharge as a strong indication of a lack of rehabilitative potential and a significant factor for consideration, along with all the other appropriate facts and circumstances before the sentencing authority. *United States v. Evans*, 35 M.J. 754 (N.M.C.M.R.1992). *See also United States v. Grindstaff*, 45 M.J. 634, 635 (N.M.Ct.Crim.App.1997)(request for bad-conduct discharge is indicative of poor rehabilitative potential); *United States v. Cowan*, 13 M.J. 906, 909 (N.M.C.M.R.1982); *United States v. St. Ann*, 6 M.J. 563, 564 (N.C.M.R. 1978).

### Conclusion

Accordingly, we affirm the findings and sentence.

Senior Judges LEO, DORMAN, and TROIDL and Judges ANDERSON and PAULSON concur.

ROLPH, Judge (dissenting):

I write separately to address the majority opinion as it relates to the important multiplicity issue raised therein, which we are seeing with great frequency. I believe the majority's analysis of this important issue is flawed.

Appellant unambiguously admitted having wrongfully and knowingly used marijuana and methamphetamine simultaneously, on a single occasion, when he smoked a "joint" into which the two substances were rolled. Record at 14–16. Despite the fact that he used these substances at the same time in one cigarette, the appellant was charged with, convicted of, and punished for, *inter alia*, two separate specifications of having violated Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1994); one alleging wrongful use of marijuana, the other alleging wrongful use of methamphetamine (both Schedule I controlled substances). I have a problem accepting the fundamental fairness of this result.

Imagine this scenario. An active duty military member enters the barracks room of another military member and steals ten separate items, all taken at the same time. Should we charge and convict that individual of ten separate larcenies? What if that same thief elects to steal a single suitcase from the barracks room that happens to contain ten separate items belonging to ten different people? Again, should we charge and convict this thief of ten separate larcenies? Of course not! Why? Because common sense,

logic, and fundamental fairness tell us that our thief, as reprehensible as he may be, has actually committed just one larceny in each of these scenarios, and should only be charged with, convicted of, and punished for one larceny.[1] The same logic and rationale should be applied to the case before us today, and appellant should now stand convicted only of having committed one offense, contained in a single specification consolidating his one, simultaneous use of marijuana and methamphetamine in violation of Article 112a, UCMJ.

The precise question posed to us in this case is whether this single act of ingestion constitutes one offense of wrongfully using two controlled substances or two offenses of wrongfully using one controlled substance each. *See United States v. Montgomery*, 30 M.J. 1118, 1119 (N.M.C.M.R.1989). I believe that the two separate specifications alleging wrongful use of different controlled substances used simultaneously are multiplicious and constitute an unreasonable multiplication of charges against appellant.

### Multiplicity

"A fair result remains not only the objective, but indeed the justification of the military justice system." *United States v. Foster*, 40 M.J. 140, 144 n. 4 (C.M.A.1994). We strive in the military to avoid multiplicity because it violates constitutional and statutory prohibitions against double jeopardy and potentially infringes upon an accused's due process rights.[2] The double jeopardy clause of the Fifth Amendment to the Constitution prohibits multiple punishments for the same offense at the same trial. *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *United States v. Teters*, 37 M.J. 370, 373 (C.M.A.1993). Generally,

the test established in the military for resolving multiplicity issues is the "elements test" announced in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and adopted in *Teters*. The "elements test" focuses consideration on the statutory elements of the crimes involved:

The applicable rule is that, where the same act or transaction constitutes a violation of ***two*** distinct statutory provisions, the test to be applied to determine whether there are two different offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Blockburger*, 284 U.S. at 304, 52 S.Ct. 180 (emphasis added).

Under this "strict elements test," the double jeopardy clause of the Fifth Amendment of the Constitution is violated if, absent express congressional authority, multiple convictions and punishments are imposed "under ***different statutes*** for the same act or course of conduct." *Teters*, 37 M.J. at 373; *Ball v. United States*, 470 U.S. at 861 (emphasis added). Thus, the "elements test" is only utilized to determine multiplicity in regard to charges alleged under ***separate*** statutory provisions. If each of the two statutory provisions involved requires proof of an element distinct from the other, we are allowed to presume that Congress intended to authorize separate punishments. *Albernaz v. United States*, 450 U.S. 333, 341–42, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).

This case, of course, does not involve "two distinct statutory provisions." It involves just one, Article 112a, UCMJ. The "elements test" of *Blockburger* and *Teters* does ***not apply*** when you are examining multiple specifications charged under the ***same*** statutory provision, and I cannot support the majority's attempt to somehow resolve this important issue under an "elements" analysis.

---

1. This example is not original, it is taken directly from Part IV of the MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). In discussing "multiple article larceny," MCM, Part IV, ¶ 46c(1)(h)(ii) states: "When a larceny of several articles is committed at substantially the same time and place, it is a single larceny even though the articles belong to different persons. Thus, if a thief steals a suitcase containing the property of several persons or goes into a room and takes property belonging to various persons, there is

but one larceny, which should be alleged in but one specification."

2. For an excellent overview of the legal and policy concerns underlying multiplicity jurisprudence, *see* William T. Barto, *Alexander the Great, The Gordian Knot, and the Problems of Multiplicity in the Military Justice System*, 152 MIL.L.REV. 1 (Spring 1996).

*See United States v. Inthavong,* 48 M.J. 628, 630 (Army Ct.Crim.App.1998)(*"Blockburger's* focus on different statutes provides no assistance in cases [that involve] the same statutory provision and thus the same statutory elements."). Additionally, to say that "separate elements" exist in this case because different controlled substances were used ignores the statutory elements of the offense.[3] The statute prohibits "use" of a controlled substance, and in this case we have only one use, despite the number of substances ultimately involved.[4]

For the situation this case presents, we must ignore the "elements test" and instead apply standard rules of statutory construction and the Supreme Court's "rule of lenity" announced in *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955).[5]

Since time immemorial, basic rules of statutory construction have mandated that penal statutes be strictly construed against the Government. *United States v. Ferguson,* 40 M.J. 823, 830 (N.M.C.M.R.1994). In other words, where legislative intent is unclear and ambiguous, the accused must receive the benefit of the doubt.[6] The rule of lenity guides us in determining issues of congressional intent to allow multiple convictions and punishments for a single offense charged in multiple specifications under one statute. It is a common sense and practical methodology for approaching issues of statutory construction such as that which we face in this case. The essence of the rule is that a federal criminal statute will not be interpreted in

such a manner "as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Ladner v. United States,* 358 U.S. 169, 178–79, 79 S.Ct. 209. Justice Frankfurter stated the rule as follows:

When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this is not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or antisocial conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment.... [I]f Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses.

*Bell v. United States,* 349 U.S. at 82–84, 75 S.Ct. 620.

While Congress clearly has the power to create, define and pyramid punishment, the rule of lenity declines to find such intent when the rules of statutory construction do not warrant such a finding. *Prince v. United States,* 352 U.S. 322, 329, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957). Also, when a single transaction is charged in multiple specifications as a violation of a single statute, there is a presumption that Congress intended but a single punishment. *Gore v. United States,*

---

**3.** The elements of use of a controlled substance in violation of Article 112a, UCMJ, are as follows:

(1) That the accused used a controlled substance; and

(2) That the use by the accused was wrongful. MCM, Part IV, ¶ 37b(2).

**4.** The majority's approach relies heavily on the fact that the appellant knowingly elected to combine the two separate controlled substances involved here. What of the situation where an accused knowingly smokes what he believes to be a marijuana cigarette at a party, but later finds out that the cigarette contained one or more *additional* controlled substances he had no knowledge of? How many "uses" is *he* guilty of? And consider the underage servicemember who knowingly consumes a single, infamous "Long Island Iced Tea" containing 7 or 8 varieties of

alcohol mixed together. Certainly, he consumes this potent beverage for its "enhanced" impact upon sobriety, but should we charge him with 7 or 8 specifications of underage drinking because of the number of different alcoholic beverages involved?

**5.** *See Teters,* 37 M.J. at 377 n. 6 ("When there is a conflict between application of the *Blockburger* rule and some other rule of construction for determining implied legislative intent, the rule of lenity applies")(citing *Walen v. United States,* 445 U.S. 684, 694, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)).

**6.** I would posit further that, when the interpretation constitutes a "close call" as to what a legislature intended, this rule would require that the "tie go to the runner."

357 U.S. 386, 391, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); *United States v. DeJesus,* 806 F.2d 31, 36 (2d Cir.1986)(citing *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955)).

The UCMJ is a penal code subject to the rule of strict construction and the rule of lenity. *United States v. Ferguson,* 40 M.J. at 830. In interpreting the issue before us concerning Article 112a, UCMJ, we must take the following path: first, we must give all terms used in that statute their ordinary meaning; second, if an ambiguity exists in the statute, we must examine the legislative history to resolve the ambiguity; and, finally, if after applying the first two steps a reasonable doubt still exists as to the statute's intent, we must apply the rule of lenity and resolve the ambiguity in favor of the appellant. *Moskal v. United States,* 498 U.S. 103, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990).

Nowhere in the language of Article 112a, UCMJ, is it expressly stated that multiple convictions and punishments are authorized or intended for the simultaneous use of two different controlled substances. *See Inthavong,* 48 M.J. at 633.[7] Also, as has recently been demonstrated, divining such intent from the plain language or legislative history of Article 112a, UCMJ, requires a "guessing game" and represents more an attempt to manufacture legislative intent than to discern it.[8] The simple fact of the matter is that Article 112a, UCMJ, and its legislative histo-ry are unclear and ambiguous on this issue. *See Inthavong,* 48 M.J. at 636–37 (Johnston, J., concurring);[9] *United States v. Montgomery,* 30 M.J. at 1120–21. Unfortunately, we are left to guess as to what Congress intended in this regard. Although Congress clearly has the ability to expressly address this issue, they have not done so. Because that is the case, the rule of lenity must be applied and we must resolve the doubt "against turning this single transaction into multiple offenses." *Bell v. United States,* 349 U.S. at 84, 75 S.Ct. 620; *Ladner v. United States,* 358 U.S. at 178, 79 S.Ct. 209.

## Unreasonable Multiplication of the Charges

The President, in successive editions of the Manual for Courts–Martial, has established a rule of policy which, in order to promote equity in sentencing, prohibits the unreasonable multiplication of charges against an accused.[10] While multiplicity is an issue of law grounded in the constitutional protections against double jeopardy, the prohibition against unreasonable multiplication of charges is a policy pronouncement intended to ensure fundamental fairness in sentencing of military accused. *United States v. Erby,* 46 M.J. 649, 651 (A.F.Ct.Crim.App.1997), *aff'd. in part, modified in part,* 49 M.J. 134 (1998). This policy "transcends the double jeopardy prohibitions of the Constitution, and looks instead to an equitable restraint on prosecutorial enthusiasm." *Id.; United*

---

7. Despite this fact, the majority of the Army Court of Criminal Appeals ultimately concluded that the legislative history of Article 112a "strongly supports the conclusion that multiple convictions are intended and authorized." *Id.* In his concurring opinion (on separate grounds), Judge Johnston strongly disagreed.

8. Compare the majority and concurring opinions in *Inthavong,* 48 M.J. at 628. I am unpersuaded by the majority opinion of the Army Court of Criminal Appeals when it attempts to bootstrap Congressional intent *vis-á-vis* Article 112a, UCMJ, from the Comprehensive Drug Abuse Prevention and Control Act of 1970 (codified at 21 U.S.C. §§ 801–904), and subsequent federal case law interpreting that Act. *Inthavong,* 48 M.J. at 631–33. The majority of the Army court decided that the simultaneous distribution of two separate drugs (LSD and marijuana) could be legally charged as separate specifications under Article 112a, UCMJ. I believe this opinion is unsupport-ed in the plain language or legislative history of Article 112a, UCMJ.

9. In his concurring opinion in *Inthavong,* Judge Johnston concludes that Article 112a, UCMJ, "is unlike the [Comprehensive Drug Abuse Prevention and Control Act of 1970] in significant ways." *Inthavong,* 48 M.J. at 637. When, as occurred in *Inthavong,* the task of deciphering congressional intent degenerates into a prolonged debate over why Congress employed the words *"a substance* described in subsection (b)" vice *"substances* described in subsection (b)," the rule of lenity "alarm" should be automatically activated.

10. For an excellent discussion of this subject in the context of multiplicity jurisprudence, *see* Michael J. Breslin and LeEllen Coacher, *Multiplicity and Unreasonable Multiplication of Charges: A Guide to the Perplexed,* 45 A.F. LAW. REV. 99 (1998).

*States v. Joyce,* 50 M.J. 567, 569 (N.M.Ct. Crim.App.1999).

R.C.M. 307(c)(4), Discussion, instructs us "[t]hat what is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." In a nutshell, the policy is a limitation on our discretion in the military to charge separate offenses against an accused, and seeks to prevent prosecutorial "piling on." *See United States v. Oatney,* 45 M.J. 185, 190 (1996)(Cox, C.J., dissenting); *United States v. Joyce,* 50 M.J. at 569.

Although the situation presented in this case is certainly not the most egregious scenario we have seen giving rise to this issue, it nevertheless puts the President's policy directly to the test. Whether an offense is unreasonably multiplied by one, or by some number larger than that, the effect is equally insidious. *See generally United States v. Sturdivant,* 13 M.J. 323 (C.M.A.1982). The appellant, as a result of his one-time use of drugs, now stands convicted of two serious offenses vice one,[11] and was subjected to twice the punishment that one offense would have authorized.[12] While initially charging these two offenses separately for contingencies of proof would be completely legitimate, once the appellant entered pleas of guilty and successfully negotiated the providence inquiry, the facts adduced in this case mandated consolidation of the two specifications into just one charge alleging wrongful use of both drugs on one occasion. Anything less is unreasonable, fundamentally unfair, and violates the spirit of R.C.M. 307.[13]

In this regard, I stress what I hope is obvious. A trial judge is not a "potted plant" when it comes to ensuring that the President's policy pronouncement in R.C.M. 307 is complied with. Military judges have the power and the discretion to decide whether "piling on" has occurred and, if so, to fix it. A judge may mandate consolidation of unreasonably multiplied charges, limit the maximum punishment, sever or dismiss certain charges, or treat unreasonably multiplied charges as multiplicious for sentencing.

I am convinced that the appellant's sentence was reasonable, and not adversely impacted by this multiplication of one offense into two. I dissent on the basis of our superior Court's recent holding in *United States v. Savage,* 50 M.J. 244 (1999), recognizing that an unauthorized conviction constitutes unauthorized punishment in and of itself. I would order consolidation of Specifications 1 and 2 under the Additional Charge.

COOPER, Judge (dissenting):

To the extent that the majority opinion states that multiplicity is not an issue in this case, I can agree. However, I respectfully dissent from the remaining positions taken and result reached by the majority. This case involves the application of the principle of preventing an unreasonable multiplication of charges and thus ensuring a fair result for an accused and does not involve the issue of multiplicity.

I agree with Judge Rolph that multiplicity is a legal concept that applies only to the issue of whether multiple convictions and punishment may be imposed under different statutes for one transaction. **Multiplicity does not apply to violations of one or more specifications under the same statute.** Because the simultaneous use of these two drugs was charged under one statute, the multiplicity analysis does not apply. Therefore, I believe the majority's "elements test" approach, as outlined in *United States v. Teters,* 37 M.J. 370, 376 (C.M.A.1993), is not a legally sound under these circumstances.[1]

---

**11.** *See United States v. Savage,* 50 M.J. 244, 245 (1999)(unauthorized conviction has potential adverse collateral consequences that may not be ignored and constitutes unauthorized punishment in and of itself).

**12.** Obviously, the jurisdictional sentencing limitations on this special court-martial curtailed that potential impact.

**13.** The multiplicity issues in this case are easily resolved by examination of the charge sheet and the record of trial. Accordingly, waiver should not be applied. *United States v. Lloyd,* 46 M.J. 19 (1997); *United States v. Harwood,* 46 M.J. 26 (1997); *Joyce,* 50 M.J. at 568–69.

**1.** Judge Rolph has set forth in clear detail the legal reasoning for this conclusion. I agree with his analysis and will not repeat it here.

I believe this case should be decided under the legal concept of an unreasonable multiplication of charges, which is discussed under RULE FOR COURTS-MARTIAL 307(c)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). I would find that this issue was not forfeited by appellant's guilty pleas and that the two specifications should have been consolidated into one specification by the military judge. Although Judge Rolph has addressed the issue through a rule of statutory construction, the "rule of lenity," and I agree that this rule could be applied, I write separately to emphasize the prohibition against unreasonable multiplication of charges.

I further disagree with the majority that the timing of the violations is of no consequence. I believe the timing of the violations is a key factor in whether an accused should be liable for multiple convictions and punishments for **simultaneous violations** of the same statute.[2] The timing of the violations is one pertinent fact to be considered in determining if the appellant should be subject to multiple convictions and increased statutory penalties. It is an important consideration in achieving a fair result for each accused.

It is clear from R.C.M. 307(c)(4), and the appellate case law that discusses it, that it is the intent of the President and the Court of Appeals for the Armed Forces, to prevent an unreasonable piling on of offenses. More importantly, R.C.M. 307(c)(4) also provides a practical method to balance the interests of the Government in charging multiple violations of one statute with the interests of the accused not to be unreasonably punished for what is, in essence, one event.[3] However, if the evidence shows, or appellant admits during the plea inquiry that two or more drugs were used simultaneously, the need for separately charged offenses is eliminated. This is what occurred in appellant's case. After the providence inquiry was conducted the military judge knew that appellant used these drugs simultaneously.[4]

I recognize the need the Government may have for broad discretion in selecting which charges it will bring in a particular case. *See Ball v. United States*, 470 U.S. 856, 859, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). The Government has a legitimate requirement to charge all known offenses at one time, R.C.M. 307(c)(4), or to charge in the alternative, depending on the contingencies of proof. In this case, the contingency was the timing of the use of the two drugs and the Government's ability to prove that each occurred on or about a certain time. However, once findings have been entered, the military judge has a continuing responsibility to ensure that the accused has not been subjected to an unreasonable "piling on" of charges.

As Chief Judge Cox said in *United States v. Foster*, 40 M.J. 140, 144 n. 4 (C.M.A. 1994)(Cox, Ch. J., concurring), "military judges must still exercise sound judgment to ensure that imaginative prosecutors do not needlessly 'pile on' charges against a military accused. A fair result remains not only the objective, but indeed the justification of the military justice system." Although it may be constitutionally permissible to find appellant guilty of two specifications of wrongfully using the drugs at the same moment in time, I find it unreasonable to do so. It subjects

---

**2.** Taken to its logical conclusion, if timing is irrelevant, then an accused could be found guilty and punished separately for each time he inhaled off the same marijuana cigarette. Such a result would clearly be unreasonable.

**3.** This balancing is necessary when, as in appellant's case, the Government must decide how to charge a violation of wrongful use of drugs which is based on the results of a urinalysis. The exact time, place, and method of use of the drugs is not known to the Government and it would be illogical for them to assume simultaneous use based on scientific results which show the presence of drugs ingested within a window of time. In appellant's case, he was originally charged with two specifications of wrongfully using drugs

on or about 6 May 1997, the day of his urinalysis. Record at 20. Knowing only that the urinalysis results were positive and that the drugs' metabolites can be in a person's system more than one day, the Government had no way of knowing by the urinalysis results if appellant used these drugs simultaneously or at different times. Indeed, after the providence inquiry the specifications were later amended to reflect the date of use as 4 May. Because it cannot know exactly when the use occurred, it was prudent and logical for the Government to charge these two offenses separately.

**4.** Appellant indicated he crushed the methamphetamine into the marijuana cigarette and then smoked it. Record at 16–17.

appellant to increased punishment from two different charges arising from what is, in essence, one transaction. In this case, appellant was tried at a special court-martial; however, had appellant's charges been referred to a general court-martial the maximum punishment for the simultaneous use of these two substances would have been 10 years rather than five. As the Supreme Court has indicated, a second conviction, standing alone, is an impermissible punishment, even if it results in no greater sentence. *Ball,* 470 U.S. at 861, 865, 105 S.Ct. 1668. *See also United States v. Savage,* 50 M.J. 244 (1999).[5]

Allowing the separate specifications to remain creates the situation that our superior Court warned against in *United States v. Sturdivant,* 13 M.J. 323 (C.M.A.1982), when it stated "[t]he exaggeration of a single offense into many seemingly separate crimes may, in a particular case, create the impression that the accused is a 'bad character' and thereby lead the court-martial to resolve against him doubt created by the evidence." *Sturdivant,* 13 M.J. at 330 (quoting *United States v. Middleton,* 12 U.S.C.M.A. 54, 58–59, 30 C.M.R. 54, 58–59, 1960 WL 4635 (1960)).

In *Sturdivant,* the Court further indicated that under the facts of that case, it felt the court members had imposed a harsher punishment because of the impression created by the exaggeration of charges that the accused was a bad person. *Id.*

More recently our sister court said, "there is an aspect to multiplicity analysis which transcends the double jeopardy prohibitions of the Constitution, and looks instead to an equitable restraint on prosecutorial enthusiasm." *United States v. Erby,* 46 M.J. 649, 651 (A.F.Ct.Crim.App.1997), *affirmed in part, modified in part,* 49 M.J. 134 (1998).

Our court has concurred with this recognition of a need for equitable restraint in certain cases. *See United States v. Joyce,* 50 M.J. 567, 569 (N.M.Ct.Crim.App.1999). Restraint is needed in appellant's case.[6]

When there is an unreasonable multiplication of charges, the military judge may combine or set aside these charges for sentencing. "Offenses rising out of the same transaction may be multiplicious for sentencing depending on the evidence." R.C.M. 1003(c)(1)(C), Discussion. As our sister court noted in *Erby,* this language of the Manual pre-dates the newer cases on multiplicity which have been decided by the Court of Appeals for the Armed Forces. *Erby,* 46 M.J. at 652. I agree with the Air Force Court that this language has survived the recent multiplicity cases and is applicable to the principle of unreasonable multiplication of charges. *See United States v. Britton,* 47 M.J. 195, 202 (Effron, J., concurring)(term "multiplicious" used to describe military judge's discretion to combine offenses during sentencing). Our broad powers under Article 66(c), UCMJ, to ensure a "fair result" for each appellant provides us with the authority to dismiss or consolidate charges and specifications in the event of an unreasonable multiplication of charges. *Foster,* 40 M.J. at 144 n. 4. I would order Specifications 1 and 2 of the Additional Charge to be consolidated.

I would also note that even though appellant did not raise the issue of unreasonable multiplication of charges at trial, the issue is not waived. We have not felt constrained in the past from finding an unreasonable multiplication of charges, even when the accused pled guilty without objection to the offenses at trial. *See U.S. v. Joyce,* 50 M.J. 567

---

5. In this regard I must also disagree with the majority's conclusion that "even assuming *arguendo,* that the military judge should have consolidated the two use specifications, the substantial rights of the appellant have not been harmed." Both the Supreme Court and our superior Court have stated that the second conviction alone is an impermissible punishment. *Ball,* 470 U.S. at 861, 865, 105 S.Ct. 1668; *United States v. Savage,* 50 M.J. 244 (1999). Thus if the majority assumes, as I have found, that the military judge should have consolidated these

specifications, then a substantial right of appellant has been affected.

6. Although footnote 2 of the majority's opinion indicates that consolidating appellant's two charges into one would be an impermissible windfall, I submit that it would not, as that is the essence of the provision of R.C.M. 307. Each case must be evaluated on its own merits and own circumstances. I find it unreasonable for the majority to make a blanket analogy of drug use to homicide under a R.C.M. 307 analysis.

(N.M.Ct.Crim.App.1999); *United States v. Johnson*, 39 M.J. 707 (N.M.C.M.R.1993), *aff'd*, 40 M.J. 318 (C.M.A.1994); *see also United States v. Wright*, 44 M.J. 739 (Army Ct.Crim.App.1996). Although the majority found this issue to be forfeited by an unconditional guilty plea, I disagree. As the majority originally stated, this is not a case involving multiplicity. Additionally, this is not a double jeopardy issue being raised for the first time on appeal in a guilty plea case, thus again I find the provisions of *Lloyd* cited by the majority to be inapplicable. *But see United States v. Denton*, 50 M.J. 189 (1998).[7] This court's mandate under Article 66(c), UCMJ, is to ensure a fair result. To impose a conviction for two specifications of the wrongful use of drugs, which occurred simultaneously, is in my opinion, an unfair result.

---

**7.** This case is a summary disposition of a granted issue found at 46 M.J. 419–420. It is unclear as to what facts this blanket statement applies. Under our court's Article 66(c), UCMJ, mandate and broad powers to ensure justice, it would seem inappropriate to apply this blanket statement to the review of a case at out level.